## STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,

v.

## Paul J. BELLINA and Eric D. Holtzman, Administrator of the Estate of Craig Holtzman, Deceased, and Neil D. Holtzman, and Marion S. Holtzman, Defendants.

### No. CIV.A.02–5816.

United States District Court, E.D. Pennsylvania.

April 30, 2003.

Conrad J.J. Radcliffe, Eric R. Brown, Marshall, Dennehey, Warner, Coleman & Goggi, Philadelphia, PA, for Plaintiff.

Daniel J. Zucker, Law Offices of Daniel J. Zucker, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Plaintiff State Farm Fire & Casualty Company ("State Farm") brought this declaratory judgment action pursuant to 28 U.S.C. § 2201[1] (the "Declaratory Judgment Action") seeking a declaration that it does not have a duty to defend or indemnify its insured, Paul J. Bellina ("Bellina"), in a lawsuit pending against him in the Court of Common Pleas for Montgomery County.[2] In the underlying civil action, Eric D. Holtzman, Neil D. Holtzman and Marion S. Holtzman seek damages for the shooting death of their decedent, Craig Holtzman ("Holtzman") (collectively, the "Defendants"), by Bellina and other named defendants (the "Holtzman Action").[3] In a subsequent criminal trial, Bellina was convicted by a jury for voluntary manslaughter in the shooting death of Holtzman, and is currently serving his sentence for that conviction.

Presently before the Court are State Farm's Motion For Summary Judgment in the Declaratory Judgment Action, Defendants' Answer in Opposition and State Farm's Reply thereto. For the following reasons, State Farm's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

State Farm is a corporation in the State of Illinois with its principal place of business located in Bloomington, Illinois. State Farm issued Bellina, a Pennsylvania resident, homeowner's insurance policy number 78–GE–1950–3 effective for the period from August 10, 2000 to August 10, 2001 (the "Policy"). The parties do not dispute that the Policy was in full force and effect during the relevant time period.

### A. The Holtzman Action

On October 16, 2001, the Holtzman Action was filed in the Court of Common Pleas for Philadelphia County and later transferred to the Court of Common Pleas for Montgomery County. (*See* Pl.'s Ex. 1, Compl. in Holtzman Action.) The complaint in the Holtzman Action asserts five claims against Bellina, and two other named defendants, Discovery Home Inspections, Inc. and The Tex–Mex Connection, including: (1) wrongful death; (2) survival actions; (3) punitive damages; (4) negligent infliction of emotional distress; and (5) loss of consortium. (*See id.*)

According to that complaint, the case arises from an unfortunate series of events that took place in the early morning hours of September 13, 2000. (*See id.* at ¶ 11.) The complaint alleges that, at approxi-

---

1. The Declaratory Judgment Act provides that a court "may declare the rights ... of any interested party." 28 U.S.C. § 2201(a). It permits declaratory relief in appropriate circumstances and contemplates that district courts will exercise discretion in determining whether to entertain such a request. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir.2000). "The purpose of a declaratory judgment procedure is to furnish an expeditious remedy for the settlement of claims which indicate imminent and inevitable litigation." *TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. Civ. A. 01–4708, 2002 WL 1340332, at *4, 2002 U.S. Dist. LEXIS 10870, at *4 (E.D. Pa. June 18, 2002).

2. The underlying action is captioned *Eric D. Holtzman, Administrator of the Estate of Craig Holtzman, Deceased and Neil D. Holtzman and Marion S. Holtzman v. Paul J. Bellina and Discovery Home Inspections, Inc. and The Tex–Mex Connection*, Civ. No. 02–11370, Court of Common Pleas for Montgomery County, Pennsylvania.

3. Default judgment was entered against Bellina in this Declaratory Judgment Action on November 6, 2002 for his failure to appear, plead or otherwise defend. *See* Order dtd. 11/6/02.

mately 4:30 a.m., Bellina shot Holtzman numerous times with a gun at and around Bellina's residence located at 1239 Browning Court, which shooting resulted in Holtzman's death. (*Id.* at ¶¶ 11–12.) The shooting is alleged to have occurred when Holtzman attempted to enter 1239 Browning Court, mistakenly believing that he was approaching and attempting to enter the nearly-identical property located next door at 1237 Browning Court, where Holtzman was then residing. (*Id.* at ¶ 15.) The complaint alleges claims for individual, joint and several negligence, carelessness, recklessness, willful, wanton, intentional and other liability-producing conduct by Bellina. (*Id.* at ¶¶ 14, 23, 24, 27, 40.) On September 17, 2002, Court of Common Pleas Judge William J. Furber, Jr. denied as premature Defendants' Motion for Partial Summary Judgment in the Holtzman Action. (*See* Defs.' Ex. C, Order in Holtzman Action dtd. 9/17/02.)

## B. Bellina's Criminal Conviction

On March 13, 2002, after a subsequent criminal trial, a jury in Montgomery County found Bellina guilty of two counts of voluntary manslaughter in the shooting death of Holtzman. (*See* Pl.'s Ex. 2, Tr. of Bellina's Crim. Trial.) Bellina appealed his conviction, which is currently pending before the Superior Court of Pennsylvania. (*See* Defs.' Mem. of Law in Support of Ans. to Mot. for Summ. J. at 2.)

## C. State Farm's Declaratory Judgment Action

On July 29, 2002, State Farm filed this Declaratory Judgment Action in this Court seeking a declaration that it has no duty to defend or indemnify Bellina in the Holtzman Action according to the terms of the Policy.[4] In the instant matter, State Farm claims that summary judgment is appropriate for the following reasons: (1) the operative facts allege non-accidental conduct by the insured and, therefore, there is no "occurrence" alleged to trigger coverage under the Policy; (2) Bellina's criminal conviction for voluntary manslaughter establishes, as a matter of law, that Bellina's conduct falls within the exclusion for intended or expected acts; and (3) Pennsylvania's public policy discourages extending insurance coverage to intentional, criminal acts.

Defendants respond that the allegations in the complaint to the Holtzman Action sufficiently allege negligence to constitute an "occurrence" under the Policy, thus, triggering coverage, and that collateral es-

---

**4.** The Policy provides that a lawsuit against the insured alleging damages for bodily injury as the result of an "occurrence" will trigger coverage under the Policy, and obligates State Farm to defend and indemnify its insured:

If a claim is made or suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or

suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

(Pl.'s Ex. 1, Policy at 15.) The Policy defines an "occurrence" as follows:

7. "occurrence," when used in Section II of this policy, means an accident, including exposure to conditions which result in:
   (a) bodily injury; or
   (b) property damage;
   during the policy period.

(Pl.'s Ex. 1, Policy at 1–2.) The Policy specifically excludes from the Policy's coverage bodily harm "expected" or "intended" by the insured. (Pl.'s Ex. 1, Policy at 16.)

toppel as to Bellina's criminal conviction for voluntary manslaughter should not apply to preclude relitigation of the issue of intent in the Holtzman Action.

For the following reasons, this Court **GRANTS** State Farm's Motion for Summary Judgment.

## II. *STANDARD OF REVIEW*

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). For a dispute to be genuine, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the nonmovant's favor. *See id.* at 255, 106 S.Ct. 2505. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although courts are to resolve any doubts as to the existence of genuine issues of fact against the moving party, the non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions to rebut the movant's motion for summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

## III. *DISCUSSION*

### A. Policy Interpretation [5]

■ The interpretation of an insurance policy is a question of law properly decided by the Court. *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). Principles of insurance policy interpretation are well-settled under Pennsylvania law, and are governed by the rules of contract interpretation. *See Medical Protective*, 198 F.3d at 103–04; *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 986 (1986). Those principles include the following: (1) the terms of the insurance policy must be given their ordinary meaning; (2) a term is ambiguous only if reasonably intelligent men, on considering it in the context of the entire policy, would honestly differ as to its meaning; and (3) the parties' true intent must be determined not only from the language but from all the circumstances.

**5.** The parties do not dispute that Pennsylvania law applies to the instant matter involving the interpretation of a homeowner's insurance policy issued to a Pennsylvania homeowner.

*See Elitzky,* 517 A.2d at 986. In determining coverage under an insurance contract, the focus is on the reasonable expectations of the insured and any ambiguous provisions in the policy should be construed in favor of the insured. *See Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994). As well, unambiguous exclusionary provisions contained in the Policy will be given effect. *See McCaffery v. Travelers Ins.,* No. Civ. A. 02–1059, 2003 U.S. Dist. LEXIS 4685, at *6 (E.D.Pa. March 4, 2003).

## B. State Farm's Duty to Defend

Pursuant to the express terms of the Policy, State Farm owes a duty to defend and indemnify its insured when "a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence ...." (*See* Pl.'s Ex. 1, Policy at 14.) The Policy defines the term "occurrence" to mean "an accident including exposure to conditions, which results in: (a) bodily injury; or (b) property damage." (*See id.* at 2.) However, coverage is excluded when bodily injury or property damage is either "expected or intended by an insured." (*See id.* at 16.)

In its Motion for Summary Judgment, State Farm argues that there has been no "occurrence" as defined by the Policy, and, even if Bellina's acts constituted an occurrence, his criminal conviction for the intentional killing of Holtzman precludes coverage under the Policy's "expected or intended" exclusion. Defendants counter that the events leading to Holtzman's fatal shooting amounted to an "occurrence," and that collateral estoppel should not apply to Bellina's criminal conviction since that conviction is on appeal.

### 1. Coverage for an "Occurrence"

State Farm has a duty to defend and indemnify its insured for damages resulting from an "occurrence," which the Policy defines as an "accident." *See Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246, 247 (1988) (finding that, under a different policy with similar language, an "'occurrence' must be an accident which a malicious, willful assault and beating could never be"). Under Pennsylvania law, the insurer has a duty to defend its insured when allegations contained in the complaint against it could potentially fall within the coverage of the policy. *Air Products & Chemicals, Inc. v. Hartford Accident & Indemnity Co.,* 25 F.3d 177, 179 (3d Cir.1994) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.,* 410 Pa. 55, 188 A.2d 320, 321–22 (1963); *Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 488 (1959); *Wilson v. Maryland Cas. Co.,* 377 Pa. 588, 105 A.2d 304, 307 (1954)). "As long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." *Elitzky,* 517 A.2d at 985. The insurer must defend the insured, even if the suit is "groundless, false, or fraudulent" and "has no basis in fact." *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649, 651 (1994). Under Pennsylvania law, the particular cause of action pleaded is "not determinative of whether coverage has been triggered .... Instead, it is necessary to look at the factual allegations contained in the complaint." *Mutual Benefit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999). Thus, as a threshold inquiry, this Court must determine whether the facts alleged in the complaint to the Holtzman Action can potentially constitute an "occurrence" to trigger coverage under the terms of Bellina's Policy. *See id.*

■ In the complaint to the Holtzman Action, Defendants plead facts in support of both negligent and intentional injury claims. Defendants aver that when Holtzman mistakenly approached and entered Bellina's home, Bellina initially responded and reacted to protect both his residence and his business property. (Pl.'s Ex. 1, Compl. in Holtzman Action at ¶ 22.) Defendants further aver that Bellina acted negligently, carelessly, recklessly, willfully, wantonly and intentionally when he: failed to ascertain Holtzman's identity; negligently reacted, and used unnecessary and excessive force responding to Holtzman's presence; was unfit to possess or use a weapon properly or safely; failed to permit Holtzman to walk away; shot Holtzman when there were numerous reasonable alternative means to induce Holtzman to leave; and used deadly force without reasonable justification. (*Id.* at ¶ 24.) Having considered the complaint in the Holtzman Action, we find that Defendants' factual allegations of Bellina's negligence appear to qualify as an "occurrence" pursuant to the terms of the Policy and, thus, trigger State Farm's duty to defend Bellina.[6] However, our inquiry does not end here, and "State Farm's duty to defend is not necessarily frozen in stasis once it is triggered." *State Farm Fire and Casualty Co. v. In HWA Angela Cooper*, No. Civ. A. 00–5538, 2001 WL 1287574, at *3, 2001 U.S. Dist. LEXIS 17050, at *10 (E.D.Pa. Oct. 24, 2001).

## 2. "Expected" or "Intended" Clause

■ State Farm contends that Bellina's criminal conviction for voluntary manslaughter, an intentional killing, conclusively establishes that Bellina expected or intended to cause Holtzman bodily injury to preclude coverage under the Policy's exclusionary provision.[7] We agree.

■ When an insurer seeks to deny coverage based on an exclusion in the policy, it is the insurer's burden to demonstrate that the exclusion applies. *Britamco Underwriters, Inc. v. C.J.H. Inc.*, 845 F.Supp. 1090, 1093 (E.D.Pa.1994). In Pennsylvania, "the victim of a criminal act is precluded from litigating the issue of the insured actor's intent where that intent has been

6. State Farm further argues that the drafter of a complaint cannot avoid an insurance coverage defense by "liberally sprinkling" the word "negligence" throughout the complaint. (State Farm's Mem. of Law in Support of Mot. for Summ. J. at 12.) We agree that a "plaintiff may not dress up a complaint so as to avoid the insurance exclusion." *Nationwide Mutual Ins. Co. v. Yaeger*, No. Civ. A. 93–3024, 1994 WL 447405, at *2, 1994 U.S. Dist LEXIS 11767, at *6 (E.D.Pa. Aug. 19, 1994). However, it is necessary to look to the factual allegations contained in the complaint to determine whether coverage is triggered. *See Haver*, 725 A.2d at 745. We must also take as true and liberally construe the factual allegations of the underlying complaint against the insured in favor of the insured. *Frog, Switch & Manufacturing Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir.1999). Relying upon this standard, we are satisfied that the complaint in the Holtzman Action sufficiently alleges negligence to trigger coverage under the Policy.

7. Although the Policy does not define the terms "expected" or "intended," the Superior Court of Pennsylvania in *Elitzky* held that insurance clauses that exclude coverage for damage or injury "intended or expected" by the insured are ambiguous as a matter of law, and should be construed against the insurer. *Elitzky*, 517 A.2d at 987. That Court further determined that for the purposes of exclusionary clauses, the terms "intentional" and "expected" are synonymous. *Id.* at 991. Under Pennsylvania law, "an insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Id.* at 989. Thus, coverage is excluded if the insured "acted even though he was substantially certain that an injury generally similar to the harm which occurred would result." *Id.*

established by independent evidence in the prior criminal proceedings." *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 954 (1992), *appeal denied,* 536 Pa. 630, 637 A.2d 290 (1993). Moreover, "criminal convictions are admissible in civil actions" and "are conclusive evidence of criminal acts." *Id.*

In the instant matter, Bellina's state of mind was conclusively determined at a jury trial. On March 21, 2002, Bellina was convicted of two counts of voluntary manslaughter pursuant to 18 Pa. Stat. Con. Ann. § 2503 for the shooting death of Holtzman, (*See* Pl.'s Ex. 2, Tr. at 48.), which conviction the Defendants do not dispute occurred.

Pennsylvania's voluntary manslaughter statute provides:

(a) GENERAL RULE.—A PERSON WHO KILLS AN INDIVIDUAL WITHOUT LAWFUL JUSTIFICATION COMMITS VOLUNTARY MANSLAUGHTER IF AT THE TIME OF THE KILLING HE IS ACTING UNDER A SUDDEN AND INTENSE PASSION RESULTING FROM SERIOUS PROVOCATION BY:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

(b) UNREASONABLE BELIEF KILLING JUSTIFIABLE.—A PERSON WHO INTENTIONALLY OR KNOWINGLY KILLS AN INDIVIDUAL COMMITS VOLUNTARY MANSLAUGHTER IF AT THE TIME OF THE KILLING HE BELIEVES THE CIRCUMSTANCES TO BE SUCH THAT, IF THEY EXISTED, WOULD JUSTIFY THE KILLING UNDER CHAPTER 5 OF THIS TITLE, BUT HIS BELIEF IS UNREASONABLE . . . .

18 Pa. Cons.Stat. Ann. § 2503. Thus, the law provides for two different circumstances in which a conviction of voluntary manslaughter is permitted: "if, either he acted under a sudden and intense passion resulting from a serious provocation or if he knowingly and intentionally kills an individual under the unreasonable belief that the killing was justified." *Commonwealth v. Weston,* 561 Pa. 199, 749 A.2d 458, 462 (2000) (citation and quotations omitted). To prove voluntary manslaughter, the Commonwealth must establish that the defendant intentionally and knowingly killed another. *See id.; see also Commonwealth v. Mason,* 474 Pa. 308, 378 A.2d 807, 808 (1977); *Commonwealth v. Butcher,* 451 Pa. 359, 304 A.2d 150, 153 (1973).

At Bellina's criminal trial, Judge Maurino J. Rossanese, Jr. instructed the jury as to the voluntary manslaughter charges against Bellina and stated, in pertinent part:

Just hone in on the charges. And the first one is fourth count, voluntary manslaughter: That on or about September 13th, 2000, in Montgomery County Pennsylvania, defendant Paul Bellina did feloniously commit criminal homicide, to wit, voluntary manslaughter, by causing the death of Craig Holtzman with unlawful justification, acting at the time of the killing under a sudden intense passion, resulting from serious provocation by Craig Holtzman . . . .

Count 5: That on or about September 13th, 2000, in Montgomery County Pennsylvania, defendant Paul Bellina did feloniously commit criminal homicide, to wit, voluntary manslaughter, by intentionally or knowingly causing the death of Craig Holtzman; believing at the time of the killing the circumstances to be such that, if they existed, would justify the killing, but that that belief was un-

reasonable. Okay? So that's the second part of voluntary manslaughter . . . .

(Pl.'s Ex. 2, Tr. at 38–39.)

During jury deliberations, the jury foreperson sought additional guidance from Judge Rossanese as to the charge on intent, to which the judge responded:

> And like I told you before, voluntary manslaughter, like the name implies, is an intentional killing. All right? And it can be under two circumstances. Number one, the intense passion that we just talked about; or number two, a justification unreasonably relied upon. Okay? And it's intentional. I mean, the act was to intentionally kill somebody, and you were either acting under an intense passion by virtue of the provocation of the victim—and like I said, the law gives you a discount for that, and they don't make it murder—or that you were acting under the assumption that you were justified in doing what you did; however, that justification was unreasonable. And again, the law gives you a discount because that negates malice.

(Pl.'s Ex. 2, Tr. at 44–45.) The jury returned with a unanimous verdict finding Bellina guilty of voluntary manslaughter, on both the fourth count and the fifth count of the jury charge. (Pl.'s Ex. 2, Tr. at 48.)

Applying Pennsylvania law to Bellina's conviction for voluntary manslaughter, which verdict required a finding that he had the intent to kill Holtzman, the issue of Bellina's intent cannot be subsequently relitigated in the Holtzman Action. Since Bellina's intent to cause bodily harm has been conclusively determined in a prior criminal proceeding, the Policy exclusion for expected and intended harm applies, and State Farm does not owe a duty to defend Bellina in the Holtzman Action.

## C.   State Farm's Duty to Indemnify

The duty to indemnify, unlike the duty to defend, is not determined on the basis of whether the factual allegations of the complaint potentially state a claim against the insured, but rest on whether the insurer's policy actually covers the claimed incident. *In HWA Angela Cooper,* 2001 WL 1287574, at *3, 2001 U.S. Dist. LEXIS 17050, at *12 (citing *Am. States Ins. Co. v. State Auto Ins. Co.,* 721 A.2d 56, 63 (Pa.Super.1998)). Since the terms of the Policy provide that the duty to indemnify is coterminous with its duty to defend, (*see* Pl.'s Ex. 1, Policy at 15.), State Farm may disclaim all coverage of Bellina's claim if it can show that, even relying upon evidence outside the complaint, no claims in the Holtzman Action are within the scope of insurance coverage. *See id.,* 2001 WL 1287574, at *4, 2001 U.S. Dist. LEXIS 17050, at *13. As discussed above, a jury found Bellina guilty of two counts of voluntary manslaughter, which required a determination that Bellina intended to kill Holtzman. Thus, Bellina's conduct falls outside the Policy's coverage, and thereby cancels State Farm's obligation to indemnify as well.[8]

## D.   Collateral Estoppel

■ State Farm argues that the doctrine of collateral estoppel precludes De-

---

**8.** State Farm also asks this Court to consider, in the alternative, Pennsylvania's public policy against finding a duty to defend or indemnify Bellina in the Holtzman Action. The Pennsylvania Supreme Court has stated that "it would be against the public policy of this Commonwealth to permit a carrier to offer insurance for damages assessed as a result of evil or illegal conduct." *Haver,* 725 A.2d at 747. Since this Court has already determined that summary judgment is proper for the reasons already discussed, we need not reach the public policy issue. *See Worldwide Underwriters Ins. Co. v. Brady,* 973 F.2d 192 (3d Cir. 1992).

fendants from relitigating intent in the Holtzman Action since Bellina's intent was conclusively established when a jury convicted him of an intentional killing. Defendants respond that collateral estoppel should not apply because Bellina's criminal conviction has been directly appealed, and may be reversed by the Superior Court of Pennsylvania. Defendants also note that State Farm raised the same argument in its Motion for Partial Summary Judgment in the Holtzman Action, and that Judge William J. Furber, who presided over that matter, "squarely repudiate[d] the facts and legal arguments advanced by State Farm" when he denied Defendants' motion. (Defs.' Mem. of Law in Support of Ans. to Mot. for Summ. J. at 9.)

The underlying purposes of collateral estoppel are to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, and, by preventing inconsistent decisions, to encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Bd. of Adj.*, 522 Pa. 44, 559 A.2d 896, 901 (1989). In a subsequent action involving the same parties but a different claim, a judgment from a prior action estops a future claim only when there has been a final determination on the merits as to the point or issue actually litigated in the prior action. *Keystone*

*Bldg. Corp. v. Lincoln Sav. & Loan Assoc.*, 468 Pa. 85, 360 A.2d 191, 195 n. 7 (1976).

Defendants argue that applying the doctrine of collateral estoppel is improper since Bellina's criminal conviction is not a final judgment. We must, however, find otherwise. The Pennsylvania Supreme Court has determined that a criminal conviction is a final judgment, subject to the doctrine of collateral estoppel, even if a pending appeal has been filed. *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872, 875 (1996) ("Thus, we hold that the pendency of an appeal of a criminal conviction does not deprive a party of the right to invoke collateral estoppel in a civil proceeding unless or until that conviction is reversed on appeal.") Relying on the Second Restatement of Judgments, the Pennsylvania Supreme Court has recognized that a remedy could be fashioned should an appellate court reverse a criminal conviction, which, in turn, would work to nullify the evidentiary foundation upon which a civil judgment is predicated:

> *See e.g.,* Restatement (Second) of Judgments § 16 (1980), which provides for the setting aside of a judgment and the restitution of benefits received under it when the judgment is based on an earlier judgment that is subsequently reversed. This procedure, however, would only be necessary when the civil plaintiff relies exclusively on the criminal conviction to prove the defendant's liability.

*Id.* at n. 3. Additionally, we are not persuaded by Defendants' reliance on Judge Furber's September 17, 2002 order as "squarely" repudiating the arguments advanced by State Farm in the Holtzman Action, since Judge Furber's order did not contain any legal analysis indicating the specific reasons for denying relief. (*See* Defs.' Ex. C, Order in Holtzman Action dtd. 9/17/02.) In accordance with the Pennsylvania Supreme Court's holding

"that once a criminal defendant has been convicted and sentenced, a plaintiff in a civil proceeding may invoke collateral estoppel to preclude the defendant from denying his criminal acts," Defendants are collaterally estopped from relitigating the issue of intent until such time that an appellate court reverses Bellina's criminal conviction. *See id.*

## IV. CONCLUSION

Since there is no genuine issue of material fact as to Bellina's intent respecting the shooting death of Holtzman, we conclude that Bellina's conduct falls within the exclusionary clause of the Policy and that State Farm is not obligated to defend or indemnify Bellina in the Holtzman Action. We also conclude that Defendants may not relitigate the issue of intent in the Holtzman Action as Bellina's intent was conclusively determined in a prior criminal proceeding, wherein a jury returned a guilty verdict on two counts of voluntary manslaughter. Accordingly, State Farm's Motion for Summary Judgement is **GRANTED.**

### ORDER

**AND NOW,** this        day of April, 2003, in consideration of the Motion for Summary Judgment filed by Plaintiff State Farm Fire & Casualty Company ("State Farm") (Doc. No. 5), the Response filed by Defendants Eric D. Holtzman as Administrator of the Estate of Craig Holtzman, Neil D. Holtzman and Marion S. Holtzman (Doc. No. 7), and State Farm's reply thereto (Doc. No. 8), it is **ORDERED** that State Farm's Motion for Summary Judgment is **GRANTED.**

It is **FURTHER ORDERED** that the declaration of this Court is as follows:

1. State Farm does not owe a duty to defend Paul J. Bellina ("Bellina") in the underlying action filed in the Court of Common Pleas for Montgomery County, Pennsylvania captioned *Eric D. Holtzman, Administrator of the Estate of Craig Holtzman, Deceased and Neil D. Holtzman and Marion S. Holtzman v. Paul J. Bellina and Discovery Home Inspections, Inc. and The Tex–Mex Connection,* Civ. No. 02–11370 (the "Holtzman Action").

2. State Farm does not owe a duty to indemnify Bellina in the Holtzman Action, and to the extent that any party to the Holtzman Action has obtained, or in the future obtains, a judgment against Bellina requiring the payment of damages, expenses, costs or fees, State Farm has no obligation to pay such amount.

### ORDER

AND NOW, this 1st day of May, 2003, in accordance with the Memorandum and Order dated April 30, 2003,

IT IS ORDERED · that Judgment be and the same is hereby entered in favor of Plaintiff, State Farm & Casualty Company.