**ERIE INSURANCE EXCHANGE,**
Appellant,

v.

**Tricia Kravchak MUFF, Harry D. Muff, Jacob Bierling, Individually and as Parent & Legal Guardian of Madison Bierling, Dec'd and Kelsey Bierling, Individually, and as Parent & Legal Guardian of Madison Bierling, Dec'd, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2004.
Filed May 24, 2004.

Donald M. Grimes, Media, for appellant.

Robert C. Ewing, Media, for appellees.

Before: BENDER, BECK, and KELLY, JJ.

KELLY, J.

¶ 1 Appellant, Erie Insurance Exchange, asks us to review the order entered by the Delaware County Court of Common Pleas in this declaratory judgment action, ordering Appellant to defend its insured, Appellee Trisha Muff, in the civil action filed against her by Appellees Jacob and Kelsey Bierling ("the Bierlings"). Appellant asks us to determine, *inter alia,* whether Mrs. Muff's conviction for first degree murder of the Bierlings' infant daughter precludes the Bierlings from bringing a subsequent civil action against Mrs. Muff sounding in negligence. We hold that Mrs. Muff's criminal convictions do not conclusively establish her intent regarding the specific negligent acts alleged in the Bierlings' civil complaint. We also hold that the inferred intent rule has not yet been extended to the situation before us, where a complaint alleges negligent care of a child by a babysitter. Accordingly, we affirm the trial court's order declaring Appellant's duty to defend Mrs. Muff against the Bierlings' civil complaint.

¶ 2 The relevant facts and procedural history of this case are as follows. On December 1, 1998, Mrs. Bierling dropped off her twelve month-old daughter, Madison Bierling, at the home of her babysitter, Mrs. Muff. Madison was in the sole care of Mrs. Muff for the entire day. When Mrs. Bierling returned to Mrs. Muff's residence to pick up her daughter later that day, she discovered Madison was in severe physical distress and immediately summoned an ambulance. Madison died on December 2, 1998.

¶ 3 Mrs. Muff was subsequently charged with Madison's death. On July 23, 1999, a jury convicted Mrs. Muff of first-degree murder,[1] aggravated assault,[2] and endan-

---

1. 18 Pa.C.S.A. § 2502(a).

2. 18 Pa.C.S.A. § 2702(a)(1).

gering the welfare of a child.[3] On September 22, 1999, the court sentenced Mrs. Muff to a mandatory sentence of life imprisonment.[4]

¶ 4 Subsequent to Mrs. Muff's criminal conviction and sentencing, the Bierlings, as individuals and as natural guardians of Madison, and Mr. Bierling, as administrator of Madison's estate, filed a civil action against Mrs. Muff. The trial court explained the nature of the Bierlings' complaint as follows:

> The civil Complaint filed on their daughter's behalf by the [Bierlings] alleges that Mrs. Bierling delivered Madison to Mrs. Muff's residence for babysitting purposes at approximately 6:15 a.m. on Tuesday morning, December 1, 1998, and that from this time until Mrs. Bierling left the Muff residence at 6:45 a.m., the child had no physical injuries. The Bierlings contended that, at 9:30 a.m. that morning, Mrs. Muff took Madison and her own child to the back yard of the home. After witnessing Madison experience some difficulty breathing due to asthma, Mrs. Muff picked up both children and ran to the back door of the house, where she tripped and caused Madison Bierling to fall and hit her head twice on the concrete patio steps. The Bierlings claimed that Mrs. Muff neither called 911, nor otherwise sought medical attention for Madison, and that later the same day, while sitting in a recliner and attempting to feed Madison with a bottle, Mrs. Muff dropped the child to the floor "in an attempt to grab a cloth to clean milk off the infant child." The Bierlings further allege in their Complaint that, after Madison was dropped to the floor from the recliner, Mrs. Muff noticed that the child was in physical distress, but continued to avoid calling 911 and other appropriate professional medical personnel. The Bierlings' Complaint alleges that, "Tricia Muff phoned Madison Bierling's grandmother after the fall, but negligently failed to tell the grandmother of the incident", and, "[i]t was not until [Mrs.] Bierling returned to pick up her daughter at approximately 2:30 p.m. on December 1, 1998 that an ambulance was finally summoned at the insistence of [Mrs.] Bierling."

> Paragraph 16 of the Bierlings' Civil action Complaint specifically avers that, "[a]s a direct and proximate result of the negligence, carelessness and recklessness actions and/or inactions of [Mrs.] Muff as aforesaid, or otherwise described within this [C]omplaint, Madison Bierling suffered serious, permanent, painful and fatal injuries. . . ." The Bierlings again allege, in a section of their Complaint entitled, "Liability of the Defendant", that Madison's injuries were "the direct and proximate result of the negligent, careless, and/or reckless actions and/or inactions of [Mrs.] Muff which include, but are not limited, to the following:

> A. Failing to take proper precautions by attempting to carry two infants at the same time.

> B. Failing to follow basic standards of care, by running over hard surfaces and up stairs while attempting to carry two infants at the same time.

> C. Failing to take proper precautions and prevent possible harm

---

3. 18 Pa.C.S.A § 4304.

4. This Court affirmed Appellant's judgment of sentence on June 25, 2001. *Commonwealth v. Muff,* 779 A.2d 1220 (Pa.Super.2001). The Pennsylvania Supreme Court denied Mrs. Muff's petition for allowance of appeal on January 2, 2002. *Commonwealth v. Muff,* 568 Pa. 629, 793 A.2d 906 (2002).

to [the Bierlings'] decedent Madison Bierling by running over ground that [Mrs.] Muff was aware was uneven.

D. Failing to take proper precautions and prevent possible harm to [the Bierlings'] decedent Madison Bierling by running up steps that [Mrs.] Muff was aware possessed a lip and presented a hazard.

E. Failing to take proper precautions and permitting [the Bierlings'] decedent Madison Bierling to fall from her grasp and strike the ground, while [Mrs.] Muff was running.

F. Failing to promptly notify the proper emergency medical services after [the Bierlings'] decedent Madison Bierling fell from her grasp and struck her head upon hard surfaces.

G. Failing to contact emergency medical services when [the Bierlings'] decedent, Madison Bierling, was in distress including being overly tired and was not breathing well.

H. Failing to obtain proper training in medical procedures, including knowing when to call for trained medical assistance.

I. Failing to promptly advise [Mrs. Bierling] that decedent Madison Bierling had fallen and struck her head. [Mrs.] Muff waited several hours after the fall to advise [Mrs.] Bierling of any problem with the child. Had [Mrs.] Muff sought immediate medical attention, the Decedent, Madison Bierling, would have survived her injuries.

J. Negligently dropping Madison Bierling on the floor in an effort to clean the infant.

K. Failure to provide adequate care to [the Bierlings'] decedent Madison Bierling, by placing her in a crib after known trauma without adequate medical attention, while the child had reduced movement and continued breathing difficulties.

L. Failure to provide adequate care to [the Bierlings'] decedent Madison Bierling, by ignoring signs of distress exhibited by the child, when [Mrs.] Muff went to wake her up from her nap.

M. Failing to provide an accurate description of the days [sic] events regarding the trauma to Madison Bierling to her mother and medical personnel in a timely manner so as to prevent further injury to the child.

N. Negligent care and supervision of the children and Madison Bierling.

O. Such other acts of negligence, carelessness and/or recklessness as will be revealed during the course of discovery and throughout this litigation."

It is facially patent from the pleadings that the entirety of the Bierlings' claims against Tricia Muff sound in negligence. (Trial Court Opinion, dated July 23, 2002, at 2–4) (internal citations to record omitted).

¶ 5 On October 27, 2000, Appellant filed this declaratory judgment action, seeking a determination that it owed no duty to defend or indemnify Mrs. Muff in the Bierlings' civil action. In response, the Bierlings filed a motion for summary judgment, which the court denied in an order filed November 30, 2001. Appellant filed

its own motion for summary judgment on February 7, 2002. Following a hearing, the court denied and dismissed the claims for relief asserted in Appellant's motions for declaratory judgment and summary judgment in an order filed May 28, 2002. The May 28th order clarified Appellant's duty to defend Mrs. Muff against the Bierlings' civil compliant. This appeal followed.

¶ 6 Appellant raises the following issues for our review:

WHETHER THE [TRIAL] COURT ERRED IN FAILING TO FIND THAT THE APPELLANT OWED NO DUTY TO INDEMNIFY AND THEREFORE DEFEND THE ACTIONS OF ITS INSURED [MRS. MUFF] WHERE [MRS. MUFF] HAS BEEN CONVICTED OF FIRST DEGREE MURDER?

WHETHER THE COURT ERRED IN FAILING TO FIND THAT, DUE TO THE CONVICTION OF [MRS. MUFF] FOR FIRST DEGREE MURDER, THE [BIERLINGS] ARE COLLATERALLY ESTOPPED FROM ARGUING THAT [MRS. MUFF'S] ACTS AND CONDUCT ON DECEMBER 1, 1998 WERE ANYTHING OTHER THAN AN INTENTIONAL, PREMEDITATED AND DELIBERATE KILLING OF MADISON BIERLING?

WHETHER THE [TRIAL] COURT ERRED IN FAILING TO FIND UNDER THE POLICY OF INSURANCE THAT PERSONAL INJURIES SUSTAINED BY A PERSON UNDER THE AGE OF 21 IN THE CARE OF THE INSURED ARE EXCLUDED FROM COVERAGE UNDER THE PERSONAL LIABILITY SECTION OF THE POLICY?

WHETHER THE [TRIAL] COURT ERRED IN FAILING TO FIND UNDER THE FACTS AND CIRCUM-STANCES THAT PUBLIC POLICY BARS A FINDING OF COVERAGE?

(Appellant's Brief at 4).

■ ¶ 7 When reviewing a trial court's disposition in a declaratory judgment action:

Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

Additionally,

[w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*White v. Keystone Insurance Company,* 775 A.2d 812 (Pa.Super.2001)[, *appeal granted,* 567 Pa. 745, 788 A.2d 378 (2001) ] (Citations omitted).

*Minnesota Fire and Cas. Co. v. Greenfield,* 805 A.2d 622, 625 (Pa.Super.2002), *appeal granted,* 573 Pa. 659, 820 A.2d 162 (2003).

■ ¶ 8 Furthermore, the interpretation of an insurance policy is a matter of law properly resolved in a declaratory judgment action. *Aetna Cas. and Sur. Co. v. Roe,* 437 Pa.Super. 414, 650 A.2d 94, 98 (1994).

**An insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify.** An insured has purchased not only the insurer's duty to indemnify successful claims which fall within the policy's coverage, but also protection against those groundless, false, or fraudulent claims

regardless of the insurer's ultimate liability to pay. Not all claims asserted against an insured, however, activate the insurer's duty to defend.

**The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint.** It is not the actual details of the injury, but the **nature of the claim** which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. **The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.**

> Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.

*D'Auria v. Zurich Insurance Co.,* [352 Pa.Super. 231, 507 A.2d 857, 859 (Pa.Super.1986) ].

*Id.* at 98–99 (some internal citations and quotation marks omitted) (emphasis added).

> However, the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint. *Mutual Benefit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999). If we were to allow the manner in which the complainant frames the request for damages to control the coverage question, we would permit in-

sureds to circumvent exclusions that are clearly part of the policy of insurance. *Erie Ins. Exchange v. Fidler,* 808 A.2d 587, 590 (Pa.Super.2002).

■ ¶ 9 Additionally, "where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer." *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649, 651 (1994), *appeal denied,* 540 Pa. 575, 655 A.2d 508 (1994) (internal citations omitted).

> An insurer who refuses to defend its insured from the outset does so at its peril, because the duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy. An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion.

*Board of Public Educ. of School Dist. of Pittsburgh v. National Union Fire Ins. Co. of Pittsburgh,* 709 A.2d 910, 913 (Pa.Super.1998), *appeal denied,* 556 Pa. 669, 727 A.2d 126 (1998) (internal citations omitted).

¶ 10 As a prefatory matter, we note the trial court's order and opinion only determined Appellant's duty to defend Mrs. Muff, not its duty to indemnify her. Accordingly, this opinion will address only the issue of Appellant's duty to defend Mrs. Muff, a duty which is much broader than an insurer's duty to indemnify. *See Aetna, supra.*

¶ 11 In its first argument, Appellant contends Mrs. Muff's criminal convictions conclusively established that Madison's death was the result of intentional acts. Appellant maintains that the insurance policy does not cover personal injuries resulting from an insured's intentional criminal acts. Appellant also generally complains that a tort claimant should not be able to couch

intentional conduct as negligence to avoid the limitations of an insurance policy. For these reasons, Appellant concludes it has no duty to defend Mrs. Muff. We disagree.

¶ 12 The insurance policy in the instant case provides in pertinent part:

**PERSONAL LIABILITY COVERAGE**

**OUR PROMISE**

**We** will pay all sums up to the amount shown on the **Declarations**, which **anyone we protect** becomes legally obligated to pay as damages because of **personal injury** or **property damage** resulting from an **occurrence** during the policy period. **We** will pay for only **personal injury** or **property damage** covered by this policy.

**We** may investigate or settle any claim or suit for damages against **anyone we protect**, at **our** expense. If **anyone we protect** is sued for damages because of **personal injury** or **property damage** covered by this policy, **we** will provide a defense with a lawyer **we** choose, even if the allegations are not true. **We** are not obligated to pay any claim or judgment or defend any suit if **we** have already used up the amount of insurance by paying a judgment or settlement.

\* \* \*

**WHAT WE DO NOT COVER—EXCLUSIONS**

**PERSONAL LIABILITY COVERAGE**

**MEDICAL PAYMENTS TO OTHERS COVERAGE**

We do not cover under *Personal Liability Coverage* and *Medical Payments to Others Coverage:*

1. **Personal injury** or **property damage** expected or intended by **anyone we protect.**

2. **Personal injury** or **property damage** arising out of **business** pursuits of **anyone we protect.** We do cover:

\* \* \*

d. incidental **business** activities of **anyone we protect.** These include, but are not limited to, baby-sitting, caddying, lawn care, newspaper delivery and other similar activities.

\* \* \*

9. Except as provided in paragraph 2.c. [concerning corporal punishment of students by educators] **personal injury** or **property damage** which arises out of the sexual molestation, corporal punishment, or physical or mental abuse by **anyone we protect.**

(2003 Erie Insurance Policy at 13–14; R.R. at 100a–101a) (emphasis in original). According to the policy, " '**occurrence**' means an accident, including continuous or repeated exposure to the same general harmful conditions." (*Id.* at 3; R.R. at 90a).

 ¶ 13 A policy provision excluding coverage for "expected or intended injuries by the insured" is ambiguous as a matter of law and must be construed against the insurer. *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945, 953 (1992), *appeal denied*, 536 Pa. 630, 637 A.2d 290 (1993) (citing *United Services Auto. Ass'n. v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 989 (1986), *appeal denied*, 515 Pa. 600, 528 A.2d 957 (1987)). The words "expected" and "intended" are synonymous when interpreting this exclusionary clause, and connote an element of conscious awareness on the part of the insured. *Id.* For purposes of this "expected or intended" provision, "an insured intends an injury if he desired to cause the consequences of his act or if he

acted knowing that such consequences were substantially certain to result." *Id.*

¶ 14 *Stidham, supra* involved an appellant who shot and killed a man during an alcoholic "black out." The appellant pled guilty to third-degree murder, multiple counts of aggravated assault, recklessly endangering another person, and criminal mischief. The estate of the deceased subsequently filed wrongful death and survival actions against the appellant, and the appellant requested his insurer, Aetna, provide coverage and a defense. Aetna declined to defend or cover the appellant. After the decedent's estate won a $1,474,503.43 verdict against the appellant, the appellant instituted a garnishment proceeding to recover the judgment amount from Aetna.

¶ 15 Aetna filed a motion for summary judgment, arguing that the appellant's guilty plea was conclusive evidence that the appellant had the "intent" to kill the decedent. *Id.* at 950. Thus, Appellant concluded the appellant's intentional conduct fell within the insurance policy exclusion for personal injury "expected or intended" by an insured. *Id.* The trial court agreed, and granted summary judgment in favor of Aetna.

¶ 16 On appeal, this Court held that the appellant's guilty plea to third-degree murder was "ambiguous enough [regarding the appellant's intent] to have no conclusive effect on a subsequent civil action against Aetna." *Id.* at 952. This Court explained:

Aetna relies on several recent decisions of this Court for its conclusion that the commission of third degree murder precludes an insured from obtaining coverage within his homeowner's insurance policy. In *Donegal Mutual Ins. Co. v. Ferrara,* [380 Pa.Super. 588, 552 A.2d 699 (Pa.Super.1989)], the insured repeatedly kicked a police officer in the groin during the course of her arrest.

In the ensuing civil damage action against the insured, the officer was unable to recover damages through the insured's homeowner's policy. In *Germantown Ins. Co. v. Martin,* [407 Pa.Super. 326, 595 A.2d 1172 (Pa.Super.1991), *appeal denied,* 531 Pa. 646, 612 A.2d 985 (1992)], the insured killed two persons in a shooting spree, wounded another, then shot and killed himself. These victims were also precluded from recovery under the insured's homeowner's policy. In both cases, however, **the insured's intent was conclusively established** by evidence independent of any unilateral guilty plea. Accordingly, Aetna's reliance on these cases is misplaced.

*Id.* (emphasis added). For these reasons, this Court reversed the trial court's grant of summary judgment to Aetna.

¶ 17 This Court addressed a similar issue in *Aetna, supra.* In *Aetna,* parents of children enrolled at a day school filed a civil complaint against the appellants, who were teachers at the school, alleging the appellants had sexually abused the children. Aetna, the appellants' insurer, filed a declaratory judgment action to ascertain its duty to defend or indemnify the appellants. Aetna filed a motion for summary judgment, which the trial court granted.

¶ 18 On appeal, this Court addressed Aetna's duty to defend and indemnify the appellants by comparing the terms of the underlying insurance policy with the nature of the allegations in the complaint filed against the appellants. *Id.* at 100. This Court explained that when an underlying complaint sounds solely in an intentional tort, an insurance policy's "expected or intended harm" clause exempts an insurer from defending and indemnifying its insured regarding that complaint. *Id.* at 101. Adopting the "inferred intent rule" set forth in *Wiley v. State Farm Fire and Casualty Co.,* 995 F.2d 457 (3rd Cir.1993),

this Court reasoned that "inferred intent to harm is an irrebuttable presumption" in a complaint alleging sexual abuse of a child. *Aetna, supra* at 102. In other words, "harm to children in sexual molestation cases is inherent in the very act of sexual assault committed on a child, regardless of the motivation for or nature of such assault, and that the resulting injuries are, as a matter of law, intentional." *Id.* (quoting *Wiley, supra* at 464). This Court ultimately affirmed the court's grant of summary judgment in favor of Aetna because the complaint against the appellants alleged only intentional sexual, physical, and mental abuse of the children.

¶ 19 Of further interest is the United States District Court's recent decision in *State Farm Fire & Cas. Co. v. Bellina,* 264 F.Supp.2d 198 (E.D.Pa.2003).[5] *State Farm* involved a defendant who shot and killed another man after the man mistakenly wandered onto defendant's property. The decedent's family filed an action against the defendant alleging, *inter alia,* wrongful death and survival actions. Meanwhile, the defendant was convicted of the criminal offense of voluntary manslaughter for the shooting death of the decedent. As a result of the defendant's criminal conviction, the defendant's insurer, State Farm, filed a declaratory judgment action seeking a determination that it did not have to defend or indemnify the defendant. State Farm then motioned for summary judgment on this action.

¶ 20 The *State Farm* Court determined that the underlying complaint sounded in negligence, and the factual averments contained therein qualified as an "occurrence" or "accident" pursuant to the policy terms. *Id.* at 204. Next, the Court considered whether the defendant's criminal conviction for voluntary manslaughter conclu-

sively established that the defendant intended to cause the decedent bodily harm. Relying on *Stidham, supra,* the Court reasoned:

> Applying Pennsylvania law to [the defendant's] conviction for voluntary manslaughter, which verdict required a finding that he had the intent to kill [the decedent], the issue of [the defendant's] intent cannot be subsequently relitigated in [the action filed by the decedent's family]. Since [the defendant's] intent to cause bodily harm has been conclusively determined in a prior criminal proceeding, the [insurance policy] exclusion for expected and intended harm applies, and State Farm does not owe a duty to defend [the defendant]. . . .

*Id.* at 206.

■ ¶ 21 Turning to the facts of the instant matter, our inquiry must begin with a comparison of the terms of the underlying insurance policy with the nature of the allegations contained in the Bierlings' complaint against Mrs. Muff. *See Aetna, supra; Britamco, supra; Germantown Insurance, supra; State Farm, supra.* The crux of the Bierlings' complaint avers Mrs. Muff negligently, carelessly, or recklessly dropped Madison on two occasions, and then failed to provide care to or summon assistance for the injured child. Examining the complaint on its face, we agree with the trial court that the Bierlings have pled sufficient facts to support a negligence action against Mrs. Muff. Thus, the Bierlings' have pled an "occurrence" or "accident" under the insurance policy. *See Aetna, supra; Britamco, supra; State Farm, supra.* Nevertheless, our inquiry does not end there. We must now determine whether Mrs. Muff's intent regarding the acts alleged in

---

**5.** In this case, the U.S. District Court applied Pennsylvania law on the interpretation of a homeowner's insurance policy. *State Farm, supra* at 202 n. 5.

the Bierlings' complaint was independently litigated at her criminal trial so as to preclude relitigation in this civil action. *See Stidham, supra; State Farm, supra.*

¶ 22 Mrs. Muff was convicted of first-degree murder, 18 Pa.C.S.A. § 2502(a), aggravated assault, 18 Pa.C.S.A. § 2702(1)(a), and endangering the welfare of a child, 18 Pa.C.S.A. § 4304. The Crimes Code defines first-degree murder as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a). Aggravated assault is defined in relevant part:

**§ 2702. Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

18 Pa.C.S.A. § 2702(a)(1). The offense of endangering the welfare of children is defined as follows:

**§ 4304. Endangering welfare of children**

**(a) Offense defined.**—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304. The crime of endangering the welfare of children is a specific intent offense, and the intent element is a "knowing violation of a duty of care." *Commonwealth v. Cardwell*, 357 Pa.Super.

38, 515 A.2d 311, 313 (1986), *appeal denied*, 515 Pa. 573, 527 A.2d 535 (1987).

¶ 23 Based on a reading of these statutes, we agree with Appellant that Mrs. Muff's criminal convictions provide "independent" evidence that at some point on December 1, 1998, she intentionally caused the death of Madison. *See Stidham, supra; State Farm, supra.* However, the Bierlings concede this point, instead focusing their complaint on the events leading up to, and occurring after, Mrs. Muff inflicted intentional harm on Madison. Essentially, the Bierlings allege Mrs. Muff was negligent both before and after she intentionally caused the death of Madison, and that these errors or omissions in her care of Madison contributed to Madison's death.

■ ¶ 24 Appellant counters by arguing the jury specifically rejected these claims during the criminal trial, and supports this assertion by referencing selected portions of the trial. Cognizant that Appellant's duty to defend is "fixed solely by the allegations in [Mrs. Muff's] underlying complaint," we decline to engage in an extensive review of the criminal trial record. *See Aetna, supra* at 98; *Britamco, supra.* With our focus firmly fixed on the Bierlings' complaint, we cannot conclusively ascertain whether the jury's verdict included a consideration of the allegedly negligent acts raised in the civil complaint. *See Stidham, supra; State Farm, supra.* Therefore, Mrs. Muff's criminal convictions do not conclusively establish her intent regarding the acts alleged in the Bierlings' complaint. Although the convictions provide independent evidence that on December 1, 1998, Mrs. Muff intentionally committed some act or omission which subsequently caused the death of Madison, the convictions themselves do not establish what this act or omission was, or whether it was one of the specific acts or omissions

raised in the Bierlings' civil complaint. *See Stidham, supra.*

¶ 25 We are mindful of the danger that an artfully-drafted pleading may attempt to circumvent the "expected or intended" personal injury limitation on a homeowner's insurance policy by "liberally sprinkling" the word negligence throughout the complaint. *See Erie Ins. Exchange, supra; State Farm, supra* at 204 n. 6. Consequently, the courts of this Commonwealth have put an emphasis on the actual factual averments contained in the underlying complaint. *See id.* Here, the Bierlings have articulated a negligence action based on specific, detailed, and clearly pled acts and omissions of Mrs. Muff. *See id.* We emphasize Appellant's duty as an insurer to defend against groundless, false, or fraudulent claims brought against its insured regardless of Appellant's ultimate liability to pay, so long as the claims are **potentially** within the scope of the policy. *See Aetna, supra.* In light of Appellant's broad duty to defend Mrs. Muff and our proper focus on the factual averments raised in the Bierlings' complaint, we conclude Mrs. Muff's criminal convictions do not preclude civil litigation of her intent regarding the acts alleged in the Bierlings' complaint. *See Stidham, supra.*

¶ 26 In its second issue, Appellant asserts that relitigation of Mrs. Muff's intent concerning the claims raised in the Bierlings' complaint is barred by the doctrine of collateral estoppel. Appellant also suggests the doctrine of inferred intent should apply to prevent Mrs. Muff from arguing she did not intend to kill Madison. Finally, Appellant claims the insurance policy does not cover personal injury arising out of the physical abuse by the insured, Mrs. Muff. Thus, Appellant concludes it has no duty to defend Mrs. Muff. We disagree.

¶ 27 This Court has previously explained:

The doctrine of collateral estoppel, which is sometimes referred to as issue preclusion, operates to prevent questions of law or issues of fact which have once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit. Collateral estoppel is applicable when:

(1) An issue decided in a prior action is identical to one presented in a later action;

(2) The prior action resulted in a final judgment on the merits;

(3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and

(4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Frederick v. Action Tire Company,* 744 A.2d 762, 765 (Pa.Super.1999)[, *appeal denied,* 564 Pa. 711, 764 A.2d 1070 (2003[2000]) ] . . . .

*Nelson v. Heslin,* 806 A.2d 873, 876–77 (Pa.Super.2002), *appeal denied,* 574 Pa. 761, 831 A.2d 600 (2003) (some internal citations omitted).

¶ 28 Presently, we reiterate our inability to determine conclusively whether the jury's verdict included a consideration of the allegedly negligent acts raised in the Bierlings' complaint. Because Mrs. Muff's intent concerning these allegedly negligent acts and omissions was not conclusively established by the verdict in the criminal trial, the doctrine of collateral estoppel does not bar litigation of this issue in the Bierlings' civil action. *See id.; Stidham, supra.*

¶ 29 Furthermore, the inferred intent rule recognized in *Aetna, supra* is not applicable to the facts of the instant

matter. As this Court explained, the inferred intent rule recognizes that in certain complaints, specifically those alleging sexual abuse of a child, the intent to harm is inferred as a matter of law. *Id.* This Court has recently extended the rule to infer a heroin dealer's intent to harm a heroin purchaser who subsequently died after ingesting the drug. *See Minnesota Fire, supra.*[6] Nevertheless, the courts of this Commonwealth have yet to extend the inferred intent rule to the situation before us, where parents allege a babysitter negligently cared for their child. Moreover, Appellant's brief admits that the inferred intent theory "was never argued by [Appellant]." (Appellant's Brief at 24). For these reasons, we conclude the allegations of negligence contained in the Bierlings' complaint do not establish Mrs. Muff's intent to harm Madison as a matter of law. *See Aetna, supra.* Additionally, we note the insurance policy provision excluding personal injury from the "sexual molestation, corporal punishment, or physical or mental abuse by anyone we protect" does not preclude Appellant from defending Mrs. Muff from the Bierlings' suit, which avers Mrs. Muff accidentally, albeit negligently, dropped Madison on two occasions.

■ ¶ 30 Appellant's third issue focuses on language in the insurance policy that purportedly excludes coverage for personal injury sustained by persons under the age of 21 who are in the care of the insured. Appellant states that Madison was a person under the age of 21 who received personal injury while in the care of Mrs. Muff, the insured. Therefore, Appellant concludes it has no duty to defend Mrs. Muff. We disagree.

¶ 31 Instantly, the contested provision of the insurance policy reads: "We do not cover under *Personal Liability Coverage* ...**Personal injury** to **you** and if residents of **your** household, **your** relatives, and persons under the age of 21 in **your** care or in the care of **your** resident relatives." (2003 Erie Insurance Policy at 14–15; R.R. at 101a–102a) (emphasis in original). This section of the insurance policy plainly and unambiguously excludes coverage for residents of the insured's household who are the insured's relatives and residents of the insured's household who are under the age of 21 and in the insured's care. We do not accept Appellant's tortured reading of this provision, especially in light of the well-established rule that any ambiguity in the insurance contract must be resolved in favor of the insured. *See Britamco, supra.* Although Madison was a person under the age of 21 in the care of Mrs. Muff, the insured, Madison was not a resident of Mrs. Muff's household. Thus, we conclude this section of the insurance policy does not preclude personal injury coverage to Mrs. Muff.

¶ 32 In its last argument, Appellant complains that the trial court's decision contravenes the well-established public policy prohibiting insurance coverage for intentional, criminal conduct. Appellant concludes this public policy consideration warrants a finding that Appellant owes no duty to defend Mrs. Muff. We cannot agree.

■ ¶ 33 We agree with Appellant in so far as "[t]he courts of Pennsylvania have refused to require an insurer to defend an insured for his own intentional torts and/or criminal acts." *See Erie Ins. Exchange, supra* at 591. We also agree that the insurance policy in question does not provide coverage for personal injury arising from an insured's intentional misconduct. However, the Bierlings' complaint sounds in negligence, which is not an

---

6. We note the Pennsylvania Supreme Court has granted allowance of appeal in this case.

intentional tort. Although Appellant owes no duty to defend Mrs. Muff regarding her intentional actions related to Madison's death, Appellant does have a duty to defend against the specific allegations of negligence contained in the Bierlings' complaint, regardless of whether these claims are ultimately determined to be specious. *See Aetna, supra.* Thus, we will not overturn the court's order based on public policy considerations.

¶ 34 Based on the foregoing, we hold that Mrs. Muff's criminal convictions do not conclusively establish her intent regarding the specific negligent acts alleged in the Bierlings' civil complaint. We also hold that the inferred intent rule has not yet been extended to the situation before us, where a complaint alleges negligent care of a child by a babysitter. Thus, we conclude the trial court's order declaring Appellants' duty to defend Mrs. Muff in the Bierlings' civil suit is supported by the evidence and free of legal error. *See Minnesota Fire, supra.* Accordingly, we affirm the court's order. Appellant's duty to defend Mrs. Muff shall continue until it is clear the Bierlings' claim has been narrowed to one beyond the policy terms. *See National Union Fire Ins., supra; Aetna, supra.*

¶ 35 Order affirmed.