APAC–ATLANTIC, INC. f/k/a APAC Virginia, Inc., a foreign corporation licensed to conduct business in West Virginia, Plaintiff,

v.

PROTECTION SERVICES, INC., a foreign corporation licensed to conduct business in West Virginia and Travelers Indemnity Company of Connecticut, a foreign corporation licensed to conduct business and sell insurance in West Virginia, Defendants.

No. 3:04 CV 49.

United States District Court,
N.D. West Virginia
at Martinsburg.

Nov. 10, 2005.

---

Michael G. Simon, Frankovitch, Anetak-is, Colantonio & Simon, Weirton, WV, for for Plaintiff.

Tracey B. Eberling, Steptoe & Johnson, PLLC, Martinsburg, WV, Lee H. Ogburn, Steven M. Klepper, Kramon & Graham, PA, Baltimore, MD, Michelle D. Baldwin,

Wm. Richard McCune, Jr., Wm. Richard McCune, Jr., PLLC, Martinsburg, WV, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BROADWATER, District Judge.

Pending before the court is the defendant Travelers Indemnity Company of Connecticut's ("Travelers") motion for summary judgment. (Docket # 20). Having reviewed the defendant's motion, the responses and replies thereto and the applicable case law, the court finds the motion should be and is hereby granted.

### I. Factual and Procedural Background

Plaintiff, APAC–ATLANTIC, INC., ("APAC") brings this breach of contract case, alleging defendant Protection Services Inc. ("PSI") and PSI's insurer, Travelers, failed to defend and indemnify APAC against losses sustained in a Berkeley County Circuit Court wrongful death suit. APAC originally filed this suit in Berkeley County Circuit Court, and PSI timely removed it based on diversity jurisdiction.

In February 1999, APAC and the West Virginia Department of Transportation entered a contract whereby APAC, as general contractor, would perform improvements on a section of Interstate 81 in Berkeley County, including a new Falling Waters bridge. In April 1999, APAC entered a subcontract with PSI., a Pennsylvania corporation. Under the contract, PSI would provide labor and equipment as well as the design, layout, and placement of all traffic control devices, maintenance of traffic, including but not limited to lane closures, as well as the placement of temporary and permanent pavement marking throughout the project.

In September 1999, a motor vehicle accident occurred on Interstate 81 in the area under construction and resulted in the death of Patsy L. Stewart and injuries to her daughter, Brandy Stewart. In September 2001, Brandy Stewart, individually and as Administrator of the Estate of Patsy L. Stewart, filed suit in Berkeley County Circuit Court against APAC, the West Virginia Department of Transportation, the Commissioner of Highways, and Rachel Schoppert, who has driving the vehicle which struck the Stewart vehicle. Ms. Stewart did *not* name PSI as a defendant in the Circuit Court action nor did APAC bring PSI in as a third-party defendant, although APAC did make PSI aware of the litigation. The case never went to trial, and the parties settled out of court with PSI never becoming involved. APAC now seeks to recover the losses incurred in the Circuit Court action.

The subcontract between APAC and PSI included an indemnity clause which stated that PSI "shall defend, indemnify and hold Contractor .... harmless from any all losses ... including but not limited to claims, suits, liabilities ... Arising out of or in any way related to (i) the performance of the Work, (ii) any breach of this Subcontract, or (iii) any act or omission by Subcontractor, its invitees, or any person performing Work directly or indirectly on behalf of Subcontractor, *regardless of whether Contractor is wholly or partially at fault.*" An addendum to the subcontract struck the underlined portion of the indemnity clause and replaced it with "To the extent and in the proportion that such claims, expenses or liabilities are found to have resulted from the Subcontractor's negligence."

The subcontract also required PSI to name APAC as an additional insured on all of its insurance policies. The Travelers policy is a commercial general liability policy which insures the risk of liability to third parties. It applies to bodily injury that "takes place in the coverage territory." The policy then goes on the define 'coverage territory' as the "United States of America (including its territories and possessions), Puerto Rico and Canada." The "additional insured" endorsement, under which APAC was named, does not identify any particular contract or project. Furthermore, Page One of the policy defines an insured as "any person or organization you are required by written contract to include as an insured, but only with respect to liability arising out of 'your work.' This coverage does not include liability *arising out of* the independent acts or omissions of such person or organization." (emphasis added).

APAC alleges Travelers failed to provide coverage, defense and indemnification and in doing so violated the West Virginia Unfair Trade Practices Act. Travelers brings this motion for summary judgment, alleging that APAC is not entitled to recover any defense costs from Travelers because APAC was an additional insured on the Travelers policy only with respect to liability arising out of the subcontractor's (PSI's) work, and the underlying complaint in Circuit Court did not allege liability arising out of PSI's work.

## II. Applicable Law

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists "if the evidence is such that a rea-

sonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R.Civ.P. 56(c); *Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (citations omitted).

### B. Choice of Law

There are two parts to the argument presented by the parties. Before determining whether Travelers had a duty to defend APAC, the court first must determine what law should be applied. Defendant Travelers argues that Pennsylvania law controls. Plaintiff APAC argues West Virginia law governs.

■ When exercising diversity jurisdiction, a District Court applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*,

313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Morris v. Slack*, 188 F.Supp.2d 645, 648 (N.D.W.Va.2002). Therefore, West Virginia choice-of-law rules apply.

■ In interpreting insurance policies, the West Virginia Supreme Court of Appeals has held that absent exceptional circumstances, when interpreting a policy "made in one state to be performed in another, the law of the state of the formation of the contract shall govern." *Liberty Mut. Ins. Co. v. Triangle, Indus., Inc.*, 182 W.Va. 580, 390 S.E.2d 562, Syl. pt. 1 (1990). The "increasingly complex nature of the insurance industry" and "the needs of the 'interstate' system of insurance" require the law "be applied in the most uniform and predictable manner possible." *Id.* at 567. In *Triangle Industries*, the insurance policy was executed in one state (New Jersey) for coverage in another state (West Virginia), i.e, the location of the insured risk, but the damage took place in a third (Ohio). Furthermore, the policy insured risks in numerous other locations besides West Virginia.[1]

The court looked to the Restatement (2d) of Conflict of Laws for guidance. Section 193 of the Restatement says that when determining the "validity of a contract of fire, surety or casualty insurance and the rights created thereby", courts should apply

> the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and to the parties, in which event the local law of the other state will be applied.

---

1. The policy insured numerous landfills located throughout the United States.

Commentary B to Section 193 notes that normally the policy will be solicited, delivered and executed in the same state where the insured is domiciled and the insured risk located. However, such was not the case in *Triangle Industries,* so the court turned to § 6 of the Restatement, which provides the factors for determining whether another state has a more significant relationship than the state in which the insured risk is located. The factors to be considered are:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

After considering the factors, the court in *Triangle Industries* found that New Jersey law should apply. The court stated it could not believe "the insurance company demonstrated any reasonable expectation at the time the contracts were entered into that any litigation over the policy would be based upon West Virginia law." *Id.* at 585, 390 S.E.2d at 567. The court went on to say that

> absent specific provisions to the contrary, it is infinitely more practicable to permit one policy to cover numerous contracts rather than to require both Triangle and the insurance companies to negotiate individual polices based upon each state where an insured risk is located.

Although the West Virginia Supreme Court has not expressly adopted § 193 of the Restatement, Federal courts sitting in diversity have predicted that the Supreme Court would adopt the analysis of § 193 in determining what state's law should apply in a dispute regarding insurance coverage. *See Pen Coal Corp. v. William H. McGee & Co., Inc.,* 903 F.Supp. 980 (S.D.W.Va... 1995). Comment (b) to § 193 of the Restatement says that

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and *(2) where the policy covers a group of risks that are scattered throughout two or more states.*

Plaintiff APAC argues that under the facts of *Pen Coal,* West Virginia law should apply because the insured risk was located in West Virginia. However, the court finds that Pen Coal can be distinguished from the facts presently before the court. Plaintiff Pen Coal was headquartered in Tennessee but operated one coal loading dock in West Virginia and one in Kentucky. Both docks were insured under one policy; however, the declaration page indicated the insurer, Phoenix Assurance Co., valued the three risks separately. *Pen Coal* involved a first-party property insurance policy. That is, the plaintiff, Pen Coal, and Phoenix negotiated the policy. Such is not the situation in the case at hand, where APAC did not negotiate the policy. Instead, the policy in the present case existed between Travelers and PSI, and PSI merely named APAC as an additional insured. The other difference is that the *Pen Coal* policy only insured those two locales-one in West Virginia and one in Kentucky. The Travelers policy with PSI

lists the entire United States as its coverage territory.

In *Pen Coal*, the United States District Court for the Southern District of West Virginia predicted the West Virginia Supreme Court "would restrict its holding in *Triangle Industries* to comprehensive general liability policies covering risks in numerous states" but in cases where the insurance policy isolates immovable risks for coverage, the Supreme Court would adopt the Restatement as its rule. Having predicted such, the *Pen Coal* court determined that "the local law of the states which the parties understood were to be the principal locations of the insured risks during the term of the policy-West Virginia and Kentucky-presumptively govern." The Court then applied § 193 of the Restatement and also applied the factors set forth in § 6 of the Restatement and decided to apply West Virginia law to the West Virginia dock and Kentucky law to the Kentucky dock. This court thus finds the Court's decision to apply the law of the state in which the insured risk was located is limited to the facts of *Pen Coal*, where there were two specific insured risks, and they were outlined as such in the policy.

In sum, the court finds the facts of the case at hand warrant the application of the Restatement as the West Virginia Supreme Court did in *Triangle Industries* rather than the approach taken by the U.S. District Court for the Southern District of West Virginia did in *Pen Coal*. Based on such an application, Pennsylvania law applies.

## C. Duty to Defend

■ Having determined Pennsylvania law applies, the court now addresses whether Travelers had a duty to defend APAC in the underlying wrongful death action. Travelers argues that under Pennsylvania law, "[a]n insurer's duty to defend is determined by the allegations in the underlying complaint." *Madison Constr. Co. v. Harleysville Mut.Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 109 (1999). The Court finds a better statement of Pennsylvania law regarding the duty to defend is this:

> An insurance company is obligated to defend an insured whenever the allegations in a complaint filed against the insured *potentially* fall with the policy's coverage. This duty to defend remains with the insurer until facts sufficient to confine the claims to liability not within the scope of the policy become known to the insurer.

*Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 810 (3d Cir.1994) (emphasis added). The Superior Court of Pennsylvania has said "[t]he insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is *actually or potentially* within the scope of the policy." *Erie Ins. Exch. v. Muff*, 2004 PA Super 177, 851 A.2d 919 (2004) (emphasis added).

■ The court must now determine whether the complaint in the underlying case set forth an injury which may have actually or potentially been within the scope of the policy which existed between PSI and Travelers. As stated earlier, the underlying complaint made no mention of PSI, and APAC never brought PSI into the case as a third party. Turning to the policy itself, Page One of the Commercial General Liability General Purpose Endorsement of the PSI–Travelers policy defines an insured as "any person or organization you are required by written contract to include as an insured, but only with respect to liability arising out of 'your work.' This coverage does not include liability *arising out of* the independent acts or omissions of such person or organization." (emphasis added). In defining "your work", the policy states as follows:

"Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Commercial General Liability Form, Page 11. The Pennsylvania Supreme Court has held that " 'arising out of' means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this phrase." *Meridian Mut. Ins. Co. v. Cont'l Bus. Ctr.*, 2005 WL 856935, 2005 U.S. Dist. LEXIS 6406 (D.Pa.2005) (citing *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 403 Pa. 603, 170 A.2d 571, 573 (Pa.1961)).

In the case at hand, the underlying plaintiffs did not allege any cause of action against defendant PSI. Furthermore, at no point in the underlying action did plaintiff APAC join PSI as a third party. Therefore, the court cannot find, under the policy, that Travelers had a duty to defend when it has not been established, or even alleged, that any liability as to the accident arose out of PSI's work. *See Meridian Mut. Ins. Co. v. Cont'l Bus. Ctr.*, 2005 WL 856935, 2005 U.S. Dist. LEXIS 6406 (D.Pa. 2005) (finding insurer of lessee had no duty to defend landlord named as additional insured whose property burned in fire where no underlying plaintiffs had alleged liability as to lessee and where policy restricted additional insured coverage to liability "arising out of" the property leased by lessee).

Indeed, Pennsylvania law provides a liberal standard of having to defend when the allegations of a complaint "potentially fall within the policy's coverage"; however, where no liability has been alleged at all as to PSI in the underlying complaint, this Court cannot find a duty to defend on behalf of Travelers.

### IV. Decision

Therefore, viewing the facts presented in the light most favorable to the plaintiff, the Court now **ORDERS** that Defendant Travelers's Motion for Summary Judgment (**Docket #20**) is now **GRANTED.**

It is so **ORDERED**.

The Clerk is directed to transmit true copies of this Order to all counsel of record herein.