2021 PA Super 93

| | | |
|---|---|---|
| GEORGE ROGERS, ADMINISTRATOR OF THE ESTATE OF JOSHUA ROGERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1915 MDA 2018 |
| LLOYD THOMAS, HAYDEN THOMAS AND/OR THE OUTDOORSMAN INC. | : | |

Appeal from the Order Dated November 21, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2016-1244

| | | |
|---|---|---|
| SUZETTE BENET, ADMINISTRATOR OF THE ESTATE OF GILBERTO ALVAREZ | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1916 MDA 2018 |
| LLOYD THOMAS, HAYDEN THOMAS AND/OR THE OUTDOORSMAN INC. | : | |

Appeal from the Order Entered November 21, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2016-00869

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

OPINION BY McLAUGHLIN, J.:        **FILED: MAY 11, 2021**

Lloyd Thomas ("Lloyd") shot and killed Joshua Rogers and Gilberto

Alvarez (collectively, "Decedents") in February 2012, while they were on

property belonging to Lloyd's father, Haydn Thomas ("Haydn").[1] Lloyd was charged criminally and a jury found him guilty in January 2014 of voluntary manslaughter. The administrators of the Decedents' estates – *i.e.*, the Rogers Estate and the Alvarez Estate (collectively, "Appellants") – brought civil suits against Lloyd, Haydn, and a gun shop on Haydn's property, The Outdoorsman Inc. ("the Outdoorsman") (collectively, "Appellees"). Although the suits were initially in different counties, they were ultimately coordinated in Susquehanna County, and the Susquehanna County court consolidated them. At trial, the court entered a directed verdict in favor of Haydn, and after the jury rendered a defense verdict, it entered judgment in favor of Lloyd and the Outdoorsman. This appeal followed.

We conclude that the trial court erred in submitting to the jury the question of whether Lloyd was negligent. However, it did not err in permitting the jury to determine whether the Outdoorsman was liable, directing a verdict in favor of Haydn, allowing the jury to determine whether the Decedents were comparatively negligent, making certain evidentiary rulings, or consolidating the cases. As to the coordination of the cases, Appellants waived their challenge by failing to lodge a timely appeal from the coordination order. We thus vacate the judgment entered in favor of Lloyd and the Outdoorsman,

---

[1] According to Appellees, Appellants in their pleadings below misspelled Haydn's name as "Hayden." **See** Haydn Thomas and The Outdoorsman, Inc.'s Br. at 2. Because Appellees did not ask the trial court to change the caption, we leave it as it was in the trial court, but we use his preferred spelling in the body of this Opinion.

affirm the judgment entered in favor of Haydn, and remand for a new trial against Lloyd and the Outdoorsman.

Shortly after the shootings, in March 2012, the Rogers Estate filed a civil action against Lloyd, Haydn, and the Outdoorsman, in Lackawanna County. Once Lloyd had been found guilty of voluntary manslaughter,[2] the Rogers Estate moved for summary judgment against Lloyd, arguing that, because of the conviction, "summary judgment must be granted." Mot. for Summ. Judg. Against Def. Lloyd Thomas, at ¶ 5. The court granted the motion and entered partial summary judgment against Lloyd. It explained in an opinion accompanying the order that by finding Lloyd guilty of voluntary manslaughter, the jury in the criminal case had found beyond a reasonable doubt that Lloyd had committed an intentional killing and did not act in justifiable self-defense. The court concluded that those findings collaterally estopped Lloyd from denying liability. **See** Opinion, filed Oct. 1, 2014, at 1, 3.

In February 2014, the Alvarez Estate initiated its action against Lloyd, Haydn, and the Outdoorsman, in Luzerne County. The Luzerne County court sustained a preliminary objection to venue and transferred the case to Susquehanna County. On interlocutory appeal, this Court affirmed the transfer.[3] The Lackawanna County court then coordinated the Rogers Estate's

---

[2] 18 Pa.C.S.A. § 2503(b); **see Commonwealth v. Thomas**, No. 1751 MDA 2014, 2015 WL 6948965 (Pa.Super. filed July 6, 2015) (unpublished memorandum).

[3] **See Benet v. Thomas**, No. 1484 MDA 2014 (Pa.Super. filed Aug. 7, 2015) (unpublished memorandum).

case (in Lackawanna County) with the Alvarez Estate's case (in Luzerne County), and directed further proceedings to take place in Susquehanna County. Susquehanna County then consolidated the cases.

As trial approached, Appellants filed a motion to preclude evidence of the Decedents' allegedly violent propensities and their "medication/drug use," as well as evidence that they had trespassed, had possessed firearms, and had criminal records. The court granted the motion in part and precluded evidence of the Decedents' alleged violent propensities and their criminal records, protection from abuse orders, vehicle violations, and prior bad acts. However, it refused to preclude evidence that the Decedents were trespassers, had firearms in their possession or in their vehicle at the time in question, or that they parked the car in the driveway. The court also denied the motion seeking to preclude evidence of medication/drug use "as to evidence relating to *chronic* drug use." Order, filed Apr. 5, 2018, at ¶ 5 (emphasis in original).

Appellants also filed a motion to preclude Appellees from asserting a defense of comparative negligence. The court denied this motion. It reasoned that the prior grant of summary judgment barred Lloyd from re-litigating the issue of intent and that Lloyd could not argue that he did not intend to shoot the Decedents or that he acted in self-defense. However, the court found Lloyd was not estopped from raising affirmative defenses not available in his criminal trial, including comparative negligence.

The court also granted a motion to quash Appellants' trial subpoena for a psychiatrist, John Michael Shovlin, M.D., and his wife, Lori Shovlin. Appellants had subpoenaed them to testify at trial as fact witnesses.

At trial, various individuals testified about Lloyd's actions in the years and months leading up to the shooting, and whether Haydn knew that Lloyd had exhibited any concerning behavior. One such witness, Jeffrey Gunn, testified about an incident in 2008 or 2009 in which a vehicle driven by Lloyd almost hit Gunn's vehicle. Gunn said he initially followed Lloyd, but then stopped, at which point Lloyd stopped his car, got out, and pulled out a gun. Gunn testified that Lloyd "just stood there looking at me," and after "[Gunn] identified [him]self and his passenger . . . [Lloyd] got back in his truck and he left." N.T., 4/16/18, at 178. Gunn testified that Haydn was not present during the incident. *Id.* at 182. A friend of Haydn's, John Touch, testified that Lloyd changed after some events in his life, such as a fire at a previous location of the Outdoorsman and a tree falling on his car. *Id.* at 190. He testified that Lloyd became scared and paranoid, and said that he spoke with Haydn about Lloyd's behavior. *Id.* at 190, 198.

Another witness, Kathryn Chesnick, testified that she called the police in January 2012 after she ran past Lloyd and saw him acting aggressively and cursing. *Id.* at 212. She told the police that Lloyd was "off his rocker," not acting like himself, and she was afraid he would kill himself or someone else. *Id.* One other person, Brian Griffis, testified that Lloyd removed a flag from Griffis' porch, threw it on the ground, and jumped on it. *Id.* at 245. However,

he said he did not speak to Haydn about the incident. *Id.* at 259. Appellants also presented evidence that Lloyd used marijuana and that he had previously entered a mental health or rehabilitation facility. *See* N.T., 4/20/18, at 61, 133.

The jury also heard testimony about the ownership of the gun Lloyd used in the shooting and Lloyd's relationship with the Outdoorsman. Appellants presented testimony that an official report listed the gun as belonging to a third party, and not to either Lloyd or the Outdoorsman. According to the testimony, such would be the case if the Outdoorsman owned the gun, because when a shop purchases a firearm, the listed owner does not change until the store sells the firearm to a customer. *See* N.T., 4/19/18, at 129. Appellants also presented testimony that Lloyd signed and filed documents for the Outdoorsman and helped with the paperwork. *See, e.g.,* N.T., 4/20/18, at 137-38. Appellees countered with testimony that the gun belonged to Lloyd and that Lloyd did not work at the Outdoorsman at the time of the shootings. *See, e.g., id.* at 153, 170.

After Appellants rested, Haydn and the Outdoorsman made oral motions for compulsory nonsuit. The trial court granted Haydn's motion, but denied the Outdoorsman's motion.

Before the charging conference, Appellants submitted a proposed verdict slip. It included the question, "Did Defendant Lloyd Thomas intentionally and/or recklessly kill Joshua Rogers and Gilberto Alvarez[?]" The sheet had check boxes for "Yes" and "No" next to the question, with the "Yes"

box marked. Appellants argued that the court had to give the jury a verdict slip informing the jury that Lloyd was liable because the court had already entered summary judgment against Lloyd as to liability. **See** N.T., 4/25/18, at 129. The court declined to use Appellants' verdict slip and instead submitted one to the jury asking it to determine whether Lloyd was negligent.

Following trial, the jury found that Lloyd and the Outdoorsman were not negligent and that both Decedents were comparatively negligent. Appellants filed a post-trial motion, which the trial court denied. This timely notice appeal followed.[4]

Appellants raise the following issues:

> a. Whether [Appellants] are entitled to a new trial when summary judgment was granted [as] to [Lloyd] and the trial court allowed the jury to determine if [Lloyd] was negligent?
>
> b. Whether nonsuit should have been denied when there was sufficient evidence of record to establish liability?
>
> c. Whether the trial court erred when it allowed the jury to hear and decide comparative negligence issues despite [Lloyd's] actions being found intentional and without justification beyond a reasonable doubt in the criminal case?
>
> d. Whether the trial court erred when it allowed psychiatrist Shovlin to not appear and testify at [the] time of trial?
>
> e. Whether the trial court erred when it allowed prior bad acts and alleged chronic drug use of [the Decedents] to be introduced at [the] time of trial?

---

[4] Appellants filed a notice of appeal at each docket number, each listing both trial court docket numbers. Because there is a separate notice at each docket, we do not quash this appeal. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1147-48 (Pa.Super. 2020) (*en banc*).

f. Whether the trial court erred when it refused to have proper questions included, allowed impermissible questions and did not have the proper order of the questions on the jury verdict slip?

g. Whether the trial court erred when it refused to give and/or included certain jury instructions?

h. Whether the trial court erred when not granting [Appellants'] directed verdict?

i. Whether this case, on remand, should be coordinated in Lackawanna County?

Appellants' Br. at 8 (unnecessary capitalization omitted). We will address Appellants' issues out of order, for ease of discussion.

## I. The Criminal Conviction and Its Impact on Liability and Affirmative Defenses

Issues one, three, and six raise various arguments regarding Lloyd's criminal conviction for voluntary manslaughter and its impact on this civil case. Appellants argue the conviction established Lloyd was liable and therefore the court erred in permitting the jury to determine otherwise. They also argue that, because Lloyd was negligent, Haydn and the Outdoorsman also were liable. They further maintain that the court erred in permitting the jury to determine whether the Decedents were comparatively negligent.

In denying Appellants' motion to preclude Appellees from asserting a defense of comparative negligence, the trial court reasoned that, although Lloyd was barred from re-litigating his intent, he was not barred from asserting Appellants were contributorily negligent:

> The Wrongful Death Act provides that "an action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by

- 8 -

the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime." 42 Pa.C.S. § 8301(a). A survival action permits the decedent's personal representative to pursue a cause of action that accrued to the decedent before death. 42 Pa.C.S. § 8302. It is the plaintiff's burden to show the defendant's negligence. Nonetheless, contributory negligence is a defense to negligence. Contributory negligence is conduct on the part of a plaintiff which falls below the standard [of care] to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm. Contributory fault may stem either from a plaintiff's careless exposure of himself to danger or from his failure to exercise reasonable diligence for his own protection. In Pennsylvania, the burden of establishing comparative negligence rests on the defendant.

Prior to transfer of the Rogers estate action from Lackawanna to Susquehanna County, Judge Peter J. O'Brien issued an order on October 1, 2014 granting the Rogers estate's motion for partial summary judgment in respect to Lloyd only. In his opinion, Judge O'Brien determined that since a conviction of voluntary manslaughter in a parallel criminal action acts as collateral estoppel, Lloyd was barred from relitigating the issue of intent in the civil action. The Benet and Rogers estates assert that Judge O'Brien has already determined that Lloyd was barred from relitigating the issue of intent in the civil action since a conviction of voluntary manslaughter in a parallel criminal action acts as collateral estoppel. This court will adopt that determination pursuant to the coordinate jurisdiction rule. Thus, Lloyd would be estopped from denying the acts for which he was convicted and would be estopped from asserting self-defense. (To establish unreasonable belief voluntary manslaughter or "imperfect self-defense," a defendant must demonstrate that he acted in self-defense by satisfying the requirements for justified self-defense, including that he was not the aggressor and did not violate a duty to retreat safely, except that an imperfect self-defense involves an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life.[)] Nevertheless,

in ***Martinez v. Uckele***, 35 Pa. D.&C. 5th 463 (Pa.Com.Pl. Monroe 2013), Judge David J. Williamson determined that while a criminal defendant is estopped from denying liability in . . . subsequent wrongful death and survival actions, he can plead comparative negligence. In ***Martinez***, the defendant had been convicted of involuntary manslaughter following the fatal shooting of his son. In reaching his determination, Judge Williamson noted that other jurisdictions have allowed civil defendants to assert comparative negligence defenses, including the United States District Court for the District of Oregon. In ***Cloud v. Hosack***, 2006 WL 1876620 (D.Or. 2006), the District Court noted that an assertion of self-defense in a criminal proceeding "is dissimilar to the claim of comparative fault." ***Id.*** at 2. The reasoning in ***Martinez*** is persuasive. Thus, Lloyd, [Haydn,] and the Outdoorsman will not be precluded from presenting evidence as to the contributory negligence of Rogers and Alvarez.

Order, filed Apr. 5, 2018, at 1 n.1 (alteration in original; some citations and internal quotation marks omitted).

## A. Whether Lloyd is Estopped From Disputing He Was Negligent

In their first issue, Appellants argue that the question of Lloyd's liability should not have gone to the jury "because a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial." Appellants' Br. at 37. Appellants point out that the trial court in Lackawanna County entered summary judgment against Lloyd. Similarly, in their sixth issue, Appellants claim the trial court erred because it refused to use a verdict slip marking negligence or recklessness as proven, even though Lloyd had

been found guilty of voluntary manslaughter.[5] We agree that the trial court should not have submitted the question of Lloyd's negligence to the jury.

To establish a right to relief on a negligence claim, the plaintiff must prove that "the defendant owed her a duty to conform to a certain standard of conduct, the defendant breached that duty, and the breach was the proximate cause of actual damages." **Gavula v. ARA Servs., Inc.**, 756 A.2d 17, 22 (Pa.Super. 2000) (citations omitted).

Absent extraordinary circumstances, a criminal conviction against a defendant estops the defendant from denying, in a civil case, things necessarily proven in the criminal case. **See Folino v. Young**, 568 A.2d 171, 172, 174 (Pa. 1990) (concluding trial court erred in submitting question of defendant's negligence in car crash to jury where defendant was convicted of driving at unsafe speed and vehicular homicide, because criminal conviction established negligence *per se*); **Hurtt v. Stirone**, 206 A.2d 624, 626 (Pa. 1965) (concluding defendant convicted of extortion in criminal trial could not "deny that which was established by his prior criminal conviction without proof that his conviction was procured by fraud, perjury or some other manner of error now sufficient to upset the conviction itself"); **In re Estate of Reinhert**, 532 A.2d 832, 835 (Pa.Super. 1987) (concluding entry of summary judgment

---

[5] They further claim the court erred by submitting a verdict slip to the jury that included questions about negligence, without asking the jury to determine whether Lloyd was reckless. They claim that, because of the design of the verdict slip, the jury never reached the question of whether Lloyd was reckless.

was proper where "[a]ppellant was convicted of theft and the Estate now requests the return of the stolen money, as ordered by the court in the criminal case").

In **Folino**, the defendant's vehicle crashed into a vehicle driven by the plaintiff. 568 A.2d at 172. A passenger in the defendant's vehicle died in the collision. *Id.* The defendant was convicted of driving at unsafe speeds and vehicular homicide. *Id.* However, a jury in a companion civil action found the defendant not negligent. *Id.* The Pennsylvania Supreme Court found it was error for the trial court to allow the jury to determine negligence. *Id.* at 172-74. It pointed out that the defendant's "failure to drive at a safe speed was an operative fact in his vehicular homicide conviction." *Id.* at 172. The court cited its decision in **Hurtt**, which reasoned that the defendant had had an opportunity and motive to overcome the criminal charges, and was not entitled to a second opportunity in the civil action to prove his innocence:

> The defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in a cloak of presumed innocence. His case was twice presented to a federal jury which found him guilty of extortion beyond a reasonable doubt, upon the same facts which are now urged as the basis for his civil liability. To now hold that the effect of those jury determinations is nil not only would be to fly in the face of reason but would also be a general indictment of the whole American jury system . . . . The defendant should not now be heard to deny that which was established by his prior criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself. Defendant has had his day in court and has failed to instill even a reasonable doubt in the collective mind of his then jury. No valid reason

exists why he should be given a chance to try his luck with another jury.

***Folino***, 568 A.2d at 173 (quoting ***Hurtt***, 206 A.2d at 626-27) (alteration in original).

The ***Folino*** court also rejected the defendant's argument that estoppel would unjustifiably prevent him from presenting evidence of justification or excuse for violation of the statute. ***Id.*** at 174. The court explained that the proven violation of the statute rendered the defendant negligent *per se* and barred any argument that the defendant's acts were justified or excusable. ***Id.*** However, the court noted that although the prior conviction estopped the defendant from denying negligence, the plaintiffs still bore the burden of proving causation. ***See id.*** at 174 n.6.

Here, the trial court explained negligence to the jury as follows:

> A person must act in a reasonably careful manner to avoid injuring or harming or damaging others. Care required varies according to the circumstances and the degree of danger at the particular time. You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case. A person who does something a reasonably careful person would not do under the circumstances at the time is negligent.

N.T., 4/26/18, at 154.[6]

---

[6] The trial court also instructed the jury,

> [T]he standard of care owed by an owner or occupier of land to a person who enters a land depends on whether the person who entered was an invitee, a licensee, or a trespasser. If you find from the evidence that the Plaintiff[s']

The jury in the criminal case found beyond a reasonable doubt that Lloyd intentionally shot Appellants, and that he believed that he had to do so in self-defense, but that his belief was unreasonable. 18 Pa.C.S.A. § 2503(b) ("A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable"). Lloyd was therefore estopped from arguing that he did not intentionally shoot Appellant and also estopped from arguing that he had a reasonable belief that such action was necessary. This would prevent a finding that he acted in a "reasonably careful manner to avoid injuring or harming or damaging others." *See* N.T., 4/26/18, at 154. Accordingly, it was error to permit the jury to determine whether or not Lloyd was negligent.

_____

decedents entered upon or remained on the premises of the Defendant without permission, right, lawful authority, express or implied invitation, or consent, the legal status of the decedents then and there was that of trespassers. . . . [I]f the Defendant owner or occupier knew or had reason to know of the – Plaintiff[s'] decedents trespassers presence the Defendants only duty to the decedent was to refrain from willful or reckless misconduct that would necessarily cause injury to the decedents. Reckless conduct is significantly worse than negligent.

The risk that harm will be caused by conduct that is reckless is higher than the risk that harm will be caused by conduct that is negligent.

N.T., 4/26/18, at 157.

Appellees cite **State Farm Fire & Casualty Co. v. Bellina**, 264 F. Supp. 2d 198, 203 (E.D. Pa. 2003) – an insurance coverage case about whether an insurance company had a duty to defend a person who has been convicted of voluntary manslaughter, maintaining that the court there concluded that "since a verdict for voluntary manslaughter required a finding that the defendant had the intent to kill . . . the issue of the defendant's intent could not be subsequently re-litigated in the civil action." Rogers Estate's Br. at 12.

The actual holding of **Bellina** has no application here. In **Bellina**, the court held that because the insured's "intent to cause bodily harm has been conclusively determined in a prior criminal proceeding, the Policy exclusion for expected and intended harm applies, and State Farm does not owe a duty to defend [the insured]." **Bellina**, 264 F.Supp.2d at 203. The case did not address the impact of a voluntary manslaughter conviction on a subsequent negligence case. Indeed, if anything, Appellees' own description of the case – that because voluntary manslaughter entails a finding of the intent to kill, the defendant's intent cannot subsequently be relitigated – supports our decision here.

Finally, we must respectfully disagree with the dissent that the error in allowing the jury to revisit the issue of Lloyd's intent was harmless. The dissent would find harmless error because it considers the jury's apportionment of 100% of the fault to the Decedents to be conclusive proof that "if the jury had to assign some percentage of negligence to Lloyd," the finding that each

Decedent was "more than 50% *causally* negligent would remain unaffected, thereby precluding any recovery." Dissenting Opinion at 10 (emphasis in original).

The difficulty is that the trial court wrongly allowed the jury to reconsider whether Lloyd was negligent and find that he was not negligent, when he had already been convicted of voluntary manslaughter. Unlike the dissent, we are not convinced that the jury's subsequent apportionment of "causal negligence" was unaffected by that error. We thus respectfully believe the better course is to remand for a new trial.

**B. Whether Haydn and the Outdoorsman are Liable**

Appellants argue that Lloyd's criminal conviction established that Haydn and the Outdoorsman also were negligent. We disagree.

To establish Haydn was liable, Appellants had to prove that Haydn had control over the firearm and knew or should have known that Lloyd intended to create an unreasonable risk of harm. **See** Restatement (Second) of Torts § 308. To establish the Outdoorsman was liable, Appellants had to establish that Lloyd was an employee and was acting within the scope of his employment when he shot Appellants. **Costa v. Roxborough Mem. Hosp.**, 708 A.2d 490, 493 (Pa.Super. 1998) (noting "employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment"). Therefore, Appellants needed to prove additional facts,

beyond Lloyd's negligence, by a preponderance of the evidence to establish Haydn and/or the Outdoorsman were liable.[7]

### C. Whether the Court Properly Instructed the Jury on Comparative Negligence

In their third argument, Appellants argue that the trial court erred when it allowed the jury to determine comparative negligence, even though Lloyd had been found guilty of committing an intentional shooting without justification. Appellants argue that where a defendant acts recklessly or intentionally, the contributory negligence of the plaintiffs is not at issue. They maintain that, because the jury in the criminal trial had found Lloyd acted intentionally, whether plaintiffs were contributorily negligent was not at issue in the civil trial. According to Appellants, the Decedents' actions, including their alleged trespassing, their positioning of their vehicle, and possessing a firearm, had been fully litigated in the criminal case, and such evidence should have been inadmissible in the civil case, as admitting it gave Lloyd "another bite at the apple." Appellants' Br. at 52.

---

[7] In a new trial, the jury will be informed that Lloyd was, in fact, negligent. With this finding, a jury could reach a different result as to the Outdoorsman, that is, it could find that Lloyd was an employee of the Outdoorsman and acting within the scope of his employment when his negligence occurred. Therefore, although we decline to find that the Outdoorsman is liable as a matter of law, we conclude that a new trial as to the Outdoorsman is required to determine whether it is vicariously liable.

As discussed below, we conclude the trial court did not err in entering a directed verdict in favor of Haydn. Therefore, Haydn's liability will not be at issue in a second trial.

Appellants further argue that the causes of action asserted against Haydn and the Outdoorsman concerned the information Haydn and the Outdoorsman had received about Lloyd, and the Decedents' actions on the day of the shooting were irrelevant to those questions. Appellants conclude that it was error to permit the issues of comparative negligence to go to the jury, and to allow evidence that would establish comparative negligence.

As noted above, the trial court concluded that the issue of comparative negligence was not before the criminal jury, and therefore the civil jury should be permitted to determine whether the Decedents were comparatively negligent. We agree.

Like the plaintiffs in **Folino**, Appellants here must still prove causation. Certainly, **Folino** rested its decision on the fact that the prior conviction there established negligence *per se*, which only entitles the plaintiff to a finding of negligence, and does not pertain to causation. Nevertheless, Appellants find themselves in the same boat because the only pertinent facts necessarily proven in Lloyd's criminal case were that he killed the Decedents, and that he acted with the intent to kill and with an unreasonable belief that he needed to act in self-defense. Because causation was still at issue in the civil case, it was an open question whether the Decedents' actions were a substantial factor in causing the harm. Hence, whether Lloyd's liability should be reduced by any negligence of the Decedents was properly before the jury. The trial court therefore did not err in denying the motion to preclude evidence of the Decedents' actions on the day in question.

## II. Grant of Motion of Nonsuit in Favor of Haydn

Appellants next argue that the trial court erred in granting Haydn's motion for nonsuit. They assert that the evidence established that the Outdoorsman owned the weapon used in the killings and Haydn had reason to believe Lloyd was not a person who should have access to a firearm. On this basis, Appellants argue that because the Outdoorsman owned the firearm, and Haydn was its president, the Outdoorsman and Haydn each had a duty to ensure that Lloyd did not use the gun. Appellants maintain that "[t]here [was] no doubt [Lloyd] was an illegal drug user . . . and, as such, access to the firearm would have to be restricted." Appellants' Br. at 42.

Appellants further argue that Haydn knew of Lloyd's "dangerous propensities," noting the trial testimony regarding Lloyd's actions that caused neighbors to call the police or to express concern to Haydn. *Id.* Appellants conclude that there was direct and circumstantial evidence that Lloyd "was a feeble minded adult as defined by the case law of the Commonwealth" and evidence Haydn knew of the cognitive disability and mental capacity that rendered Lloyd unfit to use a gun.[8] *Id.* at 49.

---

[8] In the argument section for this issue, Appellants flatly claim that it was reversible error for the trial court to "preclude[] [Appellants'] ATF expert from testifying in total upon this and other pertinent issues as to all [Appellees'] liability." Appellants' Br. at 40. However, they fail to present any developed argument on this issue, and therefore have waived it. *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa.Super. 2007) (finding waiver where appellant presented no argument or citation to the record to support the argument).

"A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief." *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 595 (Pa. 2012) (citing Pa.R.C.P. 230.1(a), (c)). We will affirm an entry of a compulsory nonsuit "only if no liability exists based on the relevant facts and circumstances, with appellant receiving 'the benefit of every reasonable inference and resolving all evidentiary conflicts in [appellant's] favor.'" *Id.* at 595-96 (quoting *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998)).

The claim against Haydn relied on the Restatement (Second) of Torts, § 308, which Pennsylvania has adopted. *Wittrien v. Burkholder*, 965 A.2d 1229, 1233 (Pa.Super. 2009). Section 308 provides:

> § 308 Permitting Improper Persons to Use Things or Engage in Activities
>
> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308. A comment to Section 308 provides:

> b. The rule stated in this Section has its most frequent application where the third person is a member of a class which is notoriously likely to misuse the thing which the actor permits him to use. Thus, it is negligent to place loaded firearms or poisons within reach of young children or feeble-minded adults. The rules also applies, however, where the actor entrusts a thing to a third person who is not of such a class, if the actor knows that the third person intends to misuse it, or if the third person's known character

or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse it.

*Id.* at § 308, comment b.

In **Wittrien**, this Court concluded the trial court did not err in granting summary judgment to the parents of an adult son on a negligence claim. 965 A.2d at 1233. The court assumed as true the facts alleged by the plaintiff, which included that the parents knew their 20-year-old son had violent propensities, was violent when he drank, and had a history of violent behavior; the parents had previously confiscated the son's gun, before returning it to him; the father feared for his safety; and the parents knew of the son's communications with hate groups, convictions for assault, drinking problems, and violent propensities. *Id.* at 1231. In finding entry of summary judgment in favor of the parents proper, we reasoned that the parents did not have control of the firearm and there was no evidence the son had a cognitive disability:

> [T]he adult son . . . was in lawful and exclusive possession of the gun from the time of its purchase until the time of the shooting, with one exception. [The parents] confiscated the gun nine months before the shooting for a short period of time after [the son] threatened suicide. [The parents] returned the gun to [the son], at [the son's] request, approximately five to seven months prior to the shooting. Thus, the record fails to reflect evidence that [the parents] had the right to control the gun at the date of the shooting. [The parent's] temporary confiscation of the gun in an emergency situation fails to support a conclusion that [the son] had the right to use the gun "only by the consent" of [the parents]. Furthermore, though the record reflects evidence of [the son's] violent propensities and bigotry, there is no evidence of any cognitive disability that would

> render him a "feebleminded adult" whose mental capacity is commensurate with that of a young child. Appellant's failure to establish that [the parents] had the right to control the firearm that was in the possession of their adult son is fatal to his argument on appeal.

*Id.* at 1233 (citations omitted).

Here, the trial court concluded that there was no evidence that Lloyd was "feebleminded" or had the mental capacity of "a young child." 1925(a) Op. at 9. We agree. Even if the Outdoorsman owned the firearm, Appellants did not present sufficient evidence to establish Lloyd had the right to possess or use the firearm only by consent of Haydn, or that Haydn knew or should have known that Lloyd intended to or was likely to use a firearm to create an unreasonable risk of harm to others. *See* Restatement (Second) of Torts § 308.

### III.   Motion to Quash and/or for Protective Order

Appellants argue that the trial court erred when it granted the motion to quash subpoena and the motion for protective order. Appellants contend that Dr. Shovlin's deposition testimony contradicts statements he made in police reports. They argue the deposition was "just days before trial," and Dr. Shovlin was "in good health and sound mind." Appellants' Br. at 58. They argue that it "would not have caused any unreasonable annoyance, embarrassment, oppression, burden or expense to have Dr. Shovlin appear at trial for his testimony." *Id.* They argue Dr. Shovlin could provide testimony regarding Lloyd's behavior and whether Haydn knew of the need to control Lloyd. Because we are remanding, we decline to address this issue.

## IV. Evidence of Prior Bad Acts

Appellants next argue that the trial court erred when it allowed evidence of the Decedents' prior bad acts and alleged chronic drug use to be admitted at trial. Appellants noted that the trial court precluded the use of prior bad acts evidence before trial and admitted evidence of Rogers' drug use to the extent it established chronic drug use. As to the drug use, Appellants claim admission of evidence of drug use was highly prejudicial and there was no evidence Rogers was impaired by the marijuana that was found in his system. Appellants further argue there was no evidence of chronic drug use. As to the other evidence of prior bad acts, Appellants claim the court "reconsidered" its prior ruling and permitted Appellees to admit evidence of prior bad acts. Appellants claim this "caused severe prejudice to [Appellants] in light of their reliance on the trial court[']s order excluding this evidence and [Appellants'] not being able to bring these issues to the jury and address them head on." Appellants' Br. at 61. They state they relied on the prior ruling when formulating their trial strategy.

Before trial, the court precluded the use of prior bad act evidence unless it related to chronic drug use. During the trial, the court concluded that Appellants opened the door to prior bad act evidence:

> While the court had initially precluded introduction of prior bad acts evidence, pre-trial, [Appellants] opened the door to the introduction of this evidence after bringing in testimony that [the Decedents] were upstanding individuals.

> As to [Appellants'] complaint that the court allowed admission of Rogers' drug use, the court permitted [Appellees] to offer limited evidence of Rogers' medication drug only as to any *chronic* drug use.

1925(a) Op. at 6 (footnote omitted; emphasis in original).

This Court "review[s] a trial court's evidentiary decisions for an abuse of discretion." ***Hassel v. Franzi***, 207 A.3d 939, 950 (Pa.Super. 2019) (citations omitted). A court abuses its discretion "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Id.*** (citations omitted).

Evidence of prior bad acts are inadmissible to show a person acted in accordance with a particular character trait:

> (b) Crimes, Wrongs or Other Acts.
>
> > (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b). However, evidence of chronic drug use is nonetheless admissible in a civil trial, as it impacts life expectancy and therefore damages. ***See, e.g., Pulliam v. Fannie***, 850 A.2d 636, 640-41 (Pa.Super. 2004).

We conclude the trial court did not err in excluding evidence of the Decedent's bad acts but admitting evidence of chronic drugs use. ***See*** Pa.R.E. 404(b); ***Pulliam***, 850 A.2d at 640-41. However, because we are remanding for a new trial, and the evidence may differ or come in a different manner at the new trial, we decline to address whether the trial court properly concluded that Appellants "opened the door" to bad acts evidence by presenting evidence of the Decedents' good character.

## V. Jury Instructions

Appellants next claim that the trial court erred when it failed to give requested jury instructions. They claim they submitted a comprehensive list of instructions, some of which they say the trial court gave in modified form, while failing to give "quite a few of the other applicable instructions requested by [Appellants]." Appellants' Br. at 67. Appellants state:

> Some of these instructions include: adverse inference/spoliation; negligence per se in light of 18 [U.S.C. §] 922(g)(3); section 219 of Restatements and other Agency instructions; Section 231 of Restatements and/or subsection b and/or c; Section 321 of Restatements; Section 323 of Restatements; Section 308 of Restatements. The trial transcript will demonstrate other instructions that were objected to and ones that were requested by [Appellants], but were not given, all of which was objected to on the record and submitting [Appellants'] own jury instructions.
>
> Wherefore, [Appellants'] respectfully request Your Court to find that the trial court was in error regarding its handling of the jury instructions and as such remand this matter to the trial court with directions to conduct a new trial as to all Defendants and more so only in regard to damages.

***Id.*** at 67-68 (internal string cite omitted).

Appellants included no individualized argument in their principal brief as to why their instructions and the wording they proposed were necessary. In so doing, they waived any argument as to the jury instructions. **Beshore**, 916 A.2d at 1140 (finding waiver where appellant presented no argument or citation to the record to support the argument). Although Appellants provide some additional detail in their reply brief,[9] such detail does not save the claim from waiver. **See Commonwealth v. Collins**, 957 A.2d 237, 259 (Pa. 2008) (stating "[a] claim is waived if it is raised for the first time in a reply brief").

## VI. Denial of Motion for Directed Verdict

Appellants claim that the court erred when it did not grant their motion for directed verdict. They claim the court should have entered a directed verdict in their favor because Lloyd was acting in the scope of his employment, and because Haydn and the Outdoorsman knew that Lloyd had violent propensities, used illegal drugs, and had mental health issues. They claim that Haydn had control over Lloyd and that the Outdoorsman owned the firearm.

We review a trial court's ruling on a motion for directed verdict to determine "whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case." **Berg v. Nationwide Mut. Ins. Co.**, 44 A.3d 1164, 1170 (Pa.Super. 2012) (quoting **Fetherolf v. Torosian**, 759 A.2d 391, 393 (Pa.Super. 2000)). "A directed verdict may be

---

[9] Appellees filled a motion to strike the reply brief and Appellants filed an answer to the motion to strike and a motion to expand the word limit. We deny the motion to strike and grant the motion to expand the word limit.

granted only where the facts are clear and there is no room for doubt." ***Id.*** (quoting ***Fetherolf***, 759 A.2d at 393). "In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." ***Id.*** (citation omitted).

The trial court did not abuse its discretion or err as a matter of law. As discussed above, Appellant failed to establish that Haydn had the ability to control the actions of his adult son. Further, although there was evidence that Lloyd was an employee of the Outdoorsman and working at the time, Appellees presented evidence he did not work at the gun shop, and, if he did, he was not working that day.

## VII.  Coordination and Consolidation of the Cases

In their final issue, Appellants claim the cases should not have been coordinated in Susquehanna County and should not have been consolidated.

### A. Coordination

Appellants claim that the Rogers Estate case was properly initiated in Lackawanna County, and had been in Lackawanna for over three years before it was coordinated with the Alvarez Estate case, which had been filed in Susquehanna County a year after the Rogers Estate filed its case. They claim the cases should have been coordinated in Lackawanna County, rather than Susquehanna County, as Lackawanna County would have promoted economy to the litigants and judicial system.

Appellants have waived their challenge to the coordination order. Pennsylvania Rule of Appellate Procedure 311(c) allows a party in a civil action to take an interlocutory appeal as of right from an order "changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of forum *non conveniens* or analogous principles." Pa.R.A.P. 311(c). The right to an interlocutory appeal under Rule 311(c) includes appeals from orders coordinating cases, pursuant to Pa.R.C.P. 213.1, as such an order effects a change of venue in at least one case. ***See Washington v. FedEx Ground Package Sys., Inc.***, 995 A.2d 1271, 1275 n.3 (Pa.Super. 2010).[10] The failure to lodge such an interlocutory appeal constitutes waiver in any subsequent appeal of any challenge "to jurisdiction over the person or over the property involved or to venue, etc." Pa.R.A.P. 311(g)(1)(ii).

The order at issue here changed venue because it transferred the Rogers Estate's case to Susquehanna County, and Appellants' challenge on appeal goes to venue as they argue Lackawanna County was a more appropriate forum for consolidation. Because Appellants did not file Rule 311(c) appeal from the order coordinating the cases, they have waived this issue, and we may not entertain it now.

---

[10] ***See also Wohlsen/Crow v. Pettinato Assoc. Contractors & Engineers, Inc.***, 666 A.2d 701, 703 (1995) ("[A]n order directing coordination of actions in different counties [pursuant to Rule 213.1] is an interlocutory order appealable as of right."); Darlington, McKeon, Schuckers & Brown, 20 West's Pa. Prac., Appellate Practice § 311:104 (2020).

**B. Consolidation**

Appellants contend the cases should not have been consolidated because certain evidence – such as Rogers' drug use and the shotgun, the placement of the vehicle and that Rogers' lack of a license – was properly admissible in the Rogers Estate's case, but not in the Alvarez Estate's case, and was in evidence in the Alvarez case only because the cases were consolidated.

We review an order consolidating cases for an abuse of discretion or error of law. ***Moore v. Ericsson, Inc.***, 7 A.3d 820, 828 (Pa.Super. 2010).

Rule 213 provides:

> (a) In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

Pa.R.C.P. 213(a).

Here, the trial court concluded that it "[could not] agree that any prejudice has occurred to either [Appellant] by consolidating the cases for trial. Only a very small amount of evidence differed between the two cases, and then only in the damages portion of trial." 1925(a) Op. at 9. This was not an abuse of discretion or error of law. The operative facts were the same in both cases, and no undue prejudice resulted.

Judgment entered in favor of Haydn affirmed. Judgment entered in favor of Lloyd and the Outdoorsman vacated. Motion to strike denied and motion to

exceed word limit granted. Application for Relief filed on January 13, 2021 denied as moot. Case remanded. Jurisdiction relinquished.

Judge Musmanno joins the opinion.

Judge Stabile files a concurring/dissenting opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>05/11/2021</u>